# HOLWERSON v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

### Division One, June 12, 1900.

1. **Previous and Comparative Negligence.** Whenever it appears from the ultimate facts proved that the plaintiff, who sues for injuries received in trying to cross a street railway track in front of a moving train, was guilty of previous negligence in getting on said track, that is, of contributory negligence which is the proximate cause of his injury, he can not recover unless the railway s agents in charge of the train were themselves guilty of wantonness in not stopping the train after discovering his perilous condition. There is no such thing in this State as comparative negligence.

2. ————: WANTONNESS: NOT PLEADED. No instructions basing the plaintiff's right to recover upon the wantonness of the railway's employees in willfully injuring him after discovering his position of danger, should be given, unless the pleadings raise an issue of wantonness as distinguished from negligence, and unless there is substantial proof to support such an issue.

3. ————: ISSUES: NEW TRIAL: ERRONEOUS INSTRUCTIONS. Where there is no wantonness in the case, either by the pleadings or evidence, but the petition simply charges the defendant with negligence and the answer charges plaintiff with contributory negligence, no instruction on the subject of wantonness should be given. And if it is conceded that the injured person was guilty of "previous negligence" in going on the track in front of the moving train, and there is no proof of wantonness in the case, the plaintiff is not entitled to recover at all, and the jury having found for defendant, the court should not give a new trial however many errors of law the court may have committed in giving and refusing instructions.

4. **Ordinance:** ENLARGEMENT OF LIABILITY. A city can not by ordinance create a right of action between third persons, nor enlarge the common law or statutory liability of citizens among themselves. This can only be done by a contract between the city and the company sought to be charged which inures to the benefit of the citizen.

Holwerson v. St. L. & Sub. Ry. Co.

5. ———: ———: CONTRACT HOW PROVED. The exercising by a company of a privilege conferred by a city ordinance, which granted it a franchise to construct and operate a street railway in its streets, although said privilege could not be acquired except by ordinance, does not make such company liable to third persons for injuries due to violations of a general ordinance which is not made a part of the ordinance granting the franchise. Before such contract can be said to exist the ordinance granting the franchise must either specifically impose liability for such violations, or refer to all general ordinances then in force requiring the grantee to take the burdens by them imposed.

6. ———: ———: FAILURE OF PROOF. In a suit by plaintiff for the killing of her husband by a street railway train, the petition charged a violation of a general ordinance which required motormen and conductors of street cars to keep a vigilant watch for all persons on foot, either upon the tracks or moving toward them, and upon the first appearance of danger to such persons to stop the car within the shortest time and space possible, and also, that the railway company had undertaken and agreed to obey such ordinance in consideration of the granting of its franchise by the city. *Held*, that there was a total failure of proof that the company had ever agreed to obey such ordinance or be bound by it, and therefore it could not be held liable to plaintiff for any injury to her husband due to a failure by those in charge of the train to obey the requirements of the ordinance, and that the company's common law liability for negligence was in no wise enlarged thereby.

7. ———: ———: OPERATING STREET CARS: PENAL ORDINANCE FOR VIOLATING GENERAL ORDINANCES. A general ordinance which makes it a misdemeanor for any officer or servant of a street railway to violate any of the provisions of an ordinance, among others one requiring the motorman or conductor to stop the car in the shortest possible time after seeing a person on the track, but conferring no particular benefits upon persons injured by a violation of such provision, not even making such violation negligence, is simply a penal statute intended as a police regulation of the city, and confers no right of action against a street railway upon the person injured by its cars.

8. Conflict in Instructions: NEW TRIAL. Where the conflict between plaintiff's and defendant's instructions are in favor of plaintiff, he can not be heard to complain of a verdict for defendant, nor should the court on such ground grant a new trial.

PER VALLIANT, J., IN SEPARATE OPINION.

1. **Contributory Negligence:** RECOVERY: ORDINARY CARE: ORDINANCE. Notwithstanding the contributory negligence of plaintiff's husband in going upon the track, the defendant is liable for the injury if after its servants saw him in peril, or (in case it is their duty to be on the lookout) if, by the exercise of ordinary care they might have seen him in time to have averted the injury but failed to do so.

2. ――――: HARMLESS ERROR: VERDICT FOR RIGHT PARTY: NEW TRIAL. As whatever error there was in the instructions was in favor of the plaintiff, and therefore there was none of which she could complain, and the verdict was for defendant and was amply supported by the evidence, no new trial should have been given in this case.

Appeal from St. Louis City Circuit Court.—*Hon. John M. Wood,* Judge.

REVERSED AND REMANDED *(with directions).*

*McKeighan, Barclay & Watts* and *Robt. A. Holland, Jr.,* for appellant.

(1) On the whole evidence in this case, the verdict of the jury was right, and therefore the appellant is entitled to have its appeal sustained and the order for a new trial vacated. Ittner v. Hughes, 133 Mo. 689; Vogg v. Railroad, 138 Mo. 180. (2) The evidence shows that the deceased's negligence was contemporaneous with his being struck by defendant's car, and was "the immediate, direct and proximate cause of the injury," and that this is not a case of the prior negligence of the deceased, the effect of which could have been avoided by the defendant, but that on the contrary it is a case of the continuing negligence of the deceased, reaching down in point of time to his being struck; if such is the case, then, even though defendant's motorman may have been negligent, the plaintiff can not recover. Watson v. Street Railway, 133 Mo. 246; Huggard v. Railroad, 134 Mo. 673; Vogg v. Railroad, 138 Mo. 172; Culbertson v. Street

Railway, 140 Mo. 35. It was the duty of the deceased before he went on defendant's track, to look and listen to see whether a car was approaching in close or dangerous proximity. Paine v. Railroad, 136 Mo. 562; Baker v. Railroad, 122 Mo. 533; Kelsey v. Railroad, 129 Mo. 362; Bunyan v. Street Railway, 127 Mo. 12. (3) The court below sustained the motion for a new trial on the ground that error was committed by the court in giving, at the request of the defendant, instructions 2, 3, 4, 5 and 6, all other grounds for motion for new trial being overruled. The instructions referred to were drawn and given at the trial on the theory that defendant was only required to exercise the ordinary care of a prudent person under like and similar circumstances, and that the ordinance pleaded in plaintiff's petition and given in evidence did not impose a higher or a different character of care on defendant with respect to the deceased. This theory of the instructions was correct. Bowen v. Railroad, 95 Mo. 268; Tetherow v. Railroad, 98 Mo. 74; Wilkins v. Railroad, 101 Mo. 93; Hanlon v. Railroad, 104 Mo. 390; Dickson v. Railroad, 104 Mo. 504; Stanley v. Union Depot, 114 Mo. 624; Frick v. Railroad, 75 Mo. 595; Bunyan v. Railroad, 127 Mo. 12; Gulick v. Clark, 51 Mo. App. 26; Booth on Street Railroads, sec. 309. (4) It was necessary for plaintiff to both plead and prove that the ordinance had been accepted by the defendant. The plaintiff did not so plead or prove. Therefore, instructions 2, 3, 4, 5 and 6 were correct, even though said ordinance, if accepted, would have changed the common law care required of defendant. Fath v. Street Railway, 105 Mo. 537; Moran v. Pullman, 134 Mo. 641; Sanders v. Street Railway, 48 S. W. Rep. 855.

*A. R. Taylor* for respondent.

(1) The evidence for the plaintiff presented a case of prior negligence by the deceased in going upon the track, and

subsequent negligence of the motorman in suffering the car to drag deceased and run over and kill him, when he could readily have stopped the car and averted the killing after the deceased was struck and being dragged. This doctrine that a railroad corporation may not, by its servants, run over and drag and kill a citizen when by the exercise of ordinary care, it could avert the injury, is not overthrown by the cases of Fath v. Railroad, Sanders v. Railroad, or Murphy v. Railroad. In the latter case the doctrine is distinctly recognized. The same doctrine is sustained in the recent case of Schmidt v. Railroad, 149 Mo. 285. (2) As the record discloses nothing as to the contents of the ordinance read in evidence, nor does it disclose whether or not the ordinance was in force when the defendant obtained its right to use the streets for its railroad, this court ought to presume in favor of the correctness of the trial court's order granting a new trial for error in the instructions given at instance of the defendant.

If the ordinance was in force when the defendant obtained its franchise to use the streets it would seem no special acceptance or agreement to obey the ordinance would be necessary. It would be necessarily implied from accepting its franchise to operate its road. Chouquette v. Railroad, 152 Mo. 257.

MARSHALL, J.—Appeal by defendant from an order granting the plaintiff a new trial, after a verdict for the defendant, the reason assigned for granting the new trial being error of law in giving instructions for the defendant.

The petition alleges that Andrew Holwerson, the plaintiff's husband, was run over and killed on August 6, 1892, by one of defendant's electric cars, at the corner of Lucas avenue and Fourteenth street in St. Louis. The petition first charges common-law negligence, and second, the violation of a general ordinance of that city which requires motor-

men and conductors of street cars to keep a vigilant watch for all persons on foot, either upon the tracks, or moving towards them, and upon the first appearance of danger to such person to stop the car within the shortest time and space possible, which ordinance provision the petition charges that the defendant undertook and agreed to obey in consideration of the granting of its franchise by the city.

The answer is a general denial and a plea of contributory negligence on the part of the deceased. The trial resulted in a verdict for the defendant, and the circuit court granted the plaintiff a new trial, assigned as a reason therefor, "that the court erred in giving instructions numbered 2, 3, 4, 5 and 6, at the request of the defendant, and overruled as to other grounds."

Those instructions are as follows:

"2. The court instructs the jury that before the plaintiff can recover against the defendant in this action, it is incumbent upon her to prove to the satisfaction of the jury that the employees of defendant in charge of the car in question failed and neglected to exercise ordinary care and diligence in stopping its car in time to have avoided the injury to the deceased, Andrew Holwerson; and unless the plaintiff has shown by the evidence such want of ordinary care on the part of the defendant company's employees in charge of said car, then the jury will find their verdict for the defendant.

"3. The court instructs the jury that before the plaintiff can recover from the defendant in this action, it is incumbent upon her to establish to the satisfaction of the jury that the employees of the defendant company in charge of its car after they saw or by the exercise of ordinary care might have seen the danger to the deceased Andrew Holwerson, were guilty of carelessness or negligence in failing and neglecting to stop said car in time to have averted the injury to said deceased, Andrew Holwerson.

"4. The court instructs the jury that the employees of the defendant company owed to the deceased, Andrew Holwerson, only that degree of care which an ordinarily careful and prudent person engaged in the same business would have exercised under like and similar circumstances; and if the jury believes from the evidence that the employees of the defendant company exercised such care, then the jury will find their verdict in favor of the defendant.

"5. The court instructs the jury that if they believe from the evidence that the employees of defendant in charge of the car in question used ordinary care in the management of said car at and near the place where the deceased, Andrew Holwerson, was injured, and that as soon as they saw the deceased, Andrew Holwerson, in a position of danger, or by the exercise of ordinary care might have seen that he was in danger, they used such care and caution in stopping said car to avoid injury to said deceased, Andrew Holwerson, as a person of ordinary care and produce would have exercised under like and similar circumstances, then the verdict of the jury must be for the defendant.

"6. The court instructs the jury that it was the duty of the deceased, Andrew Holwerson, before going on or across the tracks of the defendant company, to look and listen for approaching cars of said defendant company; and if you find from the evidence that the deceased, Andrew Holwerson, failed so to do, and that by looking and listening he could have seen or heard the approaching car of the defendant company in time to have averted the injury to himself, then you must find your verdict for the defendant, unless you further find from the evidence that the employees of the defendant engaged in the operation of its car, after they saw, or by the exercise of ordinary care could have seen, that deceased was in a position of peril, to use such care and caution in stopping said car to avoid injury to said deceased,

Andrew Holwerson, as a person of ordinary care and prudence would have exercised under like and similar circumstances."

The instructions given for the plaintiff followed the lines of the petition and authorized a verdict for the plaintiff if the defendant was guilty of common-law negligence (it is not necessary to analyze that instruction here) and also if the defendant was found guilty of a violation of the city ordinance pleaded, laying special stress upon that feature of the ordinance that requires a motorman to keep a vigilant watch for persons on or moving towards the track and on the first appearance of danger to stop the car in the shortest space and time possible.

## I.

The plaintiff says, "the evidence for the plaintiff presented a case of *prior* negligence of the deceased, Andrew Holwerson, in going upon the track, and *subsequent* negligence of the motorman in suffering the car to drag deceased and run over and kill him, when he could readily have stopped the car and averted the killing after the deceased was struck and being dragged."

On the other hand the defendant contends that the case is one of "not merely the *previous* negligence of the deceased, in coming upon the track without looking or listening, but also *his continuing* negligence after he had gone upon the track, in not getting off of it before the car struck him."

In other words, both sides assume that in the first instance the defendant was guilty of negligence and the plaintiff was guilty of contributory negligence. The difference between them is as to their respective acts and duties after this condition existed. The plaintiff contends that the defendant's agents saw, or by the exercise of a proper degree of care such as the circumstances demanded should have been

used they could have seen, the plaintiff's situation and danger, and could have readily stopped the car and averted the killing, and hence it is liable notwithstanding the prior contributory negligence of the plaintiff. The defendant, on the other hand, contends that even if all this be true still the plaintiff can not recover because notwithstanding such subsequent negligence on its part, the plaintiff continued to be negligent, in this, that by the exercise of ordinary care he could have prevented the injury by getting off of the track before the car struck him, notwithstanding any negligence on the part of the defendant in not stopping the car in time to prevent the accident after the plaintiff's position of danger was seen by it, or notwithstanding the negligence of the defendant in not exercising proper care to discover such danger.

In other words, both sides recognize the rules of law as to negligence of the defendant and contributory negligence of the plaintiff, and that there is no such thing as comparative negligence, but the plaintiff invokes the *humanitarian* doctrine that does not excuse the defendant from liability if after discovering the danger of the plaintiff it fails to exercise proper care to prevent injuring him, or if the defendant is further negligent in not discovering the danger of the plaintiff in time to prevent the injury when by proper care it might have done so and prevented it, and the defendant, conceding all this, still insists that the corollary of the proposition is that notwithstanding such subsequent negligence of the defendant, the plaintiff can not recover if he also was guilty of subsequent cotemporaneous and continuing negligence, without which he would not have been injured notwithstanding all the negligence of the defendant, or stated otherwise, that such conditions make out a case of concurring negligence, which precludes a recovery.

As a matter of law, both contentions are correct, but in its last analysis the whole doctrine of subsequent negligence

as applied to both the defendant and the plaintiff is but a refining, a subdividing and an apportioning into stages and degrees of the doctrine of negligence and contributory negligence, and has crept into the law in the effort to determine the immediate, direct and proximate cause of the injury and to ascertain whether the plaintiff was guilty of negligence which contributed with the defendant's negligence to the producing of the injury.

The whole law on the subject is so aptly expressed by MACFARLANE, J., in Watson v. Railroad, 133 Mo. 1. c. 250, that to attempt to improve upon it or to elucidate it would be as puerile as to try "to paint the lily," and we therefore simply quote and approve it.    That learned jurist's formulation of the rule is this:

"In order to avoid the effect of the unquestioned negligence of deceased, plaintiff charges that defendant's employees failed to observe proper care after the peril to which he had exposed himself was known to them, or by reasonable care might have been known.    The rule is thus invoked, which is well settled in this State, that, though one has negligently placed himself upon a railroad track in front of a moving train, those operating it owe him the duty of care to avoid injuring him, and his previous negligence will not bar a recovery if injury results to him from neglect of such a duty.

"But to carry this doctrine to the length of saying that one, who knowingly crosses the track of a railway, in such close proximity to a moving train as to be struck thereby before he could cross, would not be guilty of concurring negligence, would virtually abolish the law of contributory negligence altogether, and render nugatory a long and uniform line of decisions of this court.    [Boyd v. Railroad, 105 Mo. 371, and cases cited.]

"The rule first stated presupposes a previous, or, in point of time, a prior, negligence of plaintiff, the effect of which could be avoided by defendant.   It does not exempt plaintiff from the consequences of his own cotemporaneous negligence which is an immediate, direct, and proximate cause of the injury.   'When the negligent acts or omissions of the parties to the action were cotemporaneous, or, what is to say the same thing, when the catastrophe is the result of concurring or mutual acts of negligence, the plaintiff can not recover damages.'   [Beach, Contrib. Neg., sec. 56.]

"That deceased saw the moving train before going upon the track is demonstrated, not only by the fact that it was close to him, and he 'had eyes to see,' but by the positive evidence that 'he hurried to go around the cars.'   There is no evidence that the motorman in charge of the cars could have known that deceased intended venturing across the track until he got upon it.   Deceased was not, then, in a situation of peril, which called for action by the motorman, until he went upon the track.   When he stepped upon the track he knew, or should have known, that the cars would run upon him unless he was very quick in his movements, or unless their speed was checked.   In the circumstances, no fair and just conclusion can be drawn but that the negligence of deceased was a direct, cotemporaneous, and proximate cause of his own death.   In the face of known and imminent danger he took the risk of crossing the track, and though, in the moment of danger, the trainmen may also have neglected their duties, he must bear the consequence of his contributory negligence.   The doctrine of comparative negligence is not recognized in this State."

The same principle was announced by Gantt, P. J., in Huggart v. Railroad, 134 Mo. 673, and by Sherwood, J., in Vogg v. Railroad, 138 Mo. 172, and has been the long accepted rule in this State, as is shown by Sherwood, J., in

the cases cited in the Vogg case.   True, these cases announce
the principle as applied to the first analysis of the case,
while the Watson case established the principle when applied
to the second analysis of the case; but as above indicated,
such second analysis has been resorted to only for the pur-
pose of reducing the case to its last analysis in order to deter-
mine the proximate cause of the injury, and that if such last
analysis shows negligence of the defendant and also contribu-
tory or concurrent negligence of the plaintiff, it is as fatal to
the plaintiff's right to recover as if such conditions had ap-
peared on the first analysis and there had been no room for a
second analysis.   In other words, the principle of law is the
same whether the case is partially examined or thoroughly
examined, for whenever it appears from the ultimate facts
proved that the plaintiff was guilty of contributory negli-
gence, it ends the case, as there is no such thing as compara-
tive negligence.

The doctrine of the Watson case is fully supported by
the case of Sinclair v. Railroad, 133 Mo. l. c. 241; Culbert-
son v. Railroad, 140 Mo. 35; Mo. Pac. Railroad Co. v. Mose-
ley, 57 Fed. Rep. 922; Kirtley v. Railroad, 65 Fed. Rep. 391.
In the case last cited it was said:   "Conceding that there was
a duty upon the defendant's servants to anticipate that per-
sons would be upon the track, this is set off by the duty on
the part of the deceased to anticipate that trains would run
on the track, and hence keep a lookout for them.   Conceding
that a careful lookout on the part of the defendant's servants
would have revealed the deceased on the track, this is set off
by the fact that a diligent outlook by the deceased would
have revealed the approach of the engine at his rear.   Con-
ceding that the defendant's servants might have stopped the
engine by the exercise of ordinary care before running onto
the deceased, this concession is set off by the indisputable
fact that the deceased after he might have discovered the
engine, and even at a later stage in the events which led up

to the catastrophe, might have stepped aside and have avoided the engine." The same rule is announced in Sinclair v. Railroad, 133 Mo. l. c. 242.

This question has been so ably discussed by SANBORN, J., concurred in by BREWER circuit justice, in Mo. Pac. Railroad Co. v. Moseley, 57 Fed. Rep. 921, that we quote the reasoning employed. The case was this: The plaintiff was walking eastwardly on the defendant's track, in its yards where there were five tracks, in St. Louis, which for a long time had been used by pedestrians, and could have seen a train approaching from the rear for at least a thousand feet; the defendant's engine was backing and its tender was piled high with coal so that the employees on the engine could not see the plaintiff on the track; the engine was running at a high rate of speed, in excess of the rate limited by the city ordinance, and no bell was kept ringing, as the city ordinances required, nor was there any one stationed on the tender to look out for persons on the track; a train approached the plaintiff from the east and he stepped onto the next parallel track and continued to walk thereon, without once looking behind him, for over three hundred feet, when the engine that was backing as aforesaid struck him and injured him. The learned judge, after stating these conditions, said: "Conceding all that he claims—that the customary use of these yards by pedestrians proved the implied assent of the defendant to such use, and placed the plaintiff in the position of a licensee—still he is not in a position to recover. A license did not relieve him from the duty of exercising ordinary care to protect himself from the obvious dangers from the engines and cars that were moving about him. It certainly gave him no higher right than that of a traveler on a public highway at a railroad crossing. It is the duty of such a traveler to stop and look and listen before he crosses a single track. Every railroad track is a constant warning of danger from the powerful machines that traverse it. The

traveler on the public highway who, without looking both ways and listening for the coming locomotive, steps upon the railroad track, and is injured, is guilty of contributory negligence that bars his recovery, even though the railroad company may have been negligent. [Railroad Co. v. Houston, 95 U. S. 697; Schofield v. Ry. Co., 114 U. S. 615; 5 Sup. Ct. Rep. 1125; McGrath v. Railway Co., 59 N. Y. 469; Rodrain v. Railroad Co. (N. Y. App.), 26 N. E. Rep. 741; and the other authorities cited *supra*.] How, then, can this plaintiff recover when he deliberately stepped upon the track and walked 300 feet without once looking behind him? The fact that the roar of the passing freight train made his sense of hearing practically useless, made the duty of the frequent and diligent use of his eyes more imperative. [Mynning v. Railroad Co. (Mich.), 26 N. W. Rep. 514.] If it is contributory negligence that bars recovery to cross a single track infrequently used, and but a few feet wide, without listening and looking for the coming locomotive, it is certainly gross negligence to step upon a track in a busy railroad yard, and walk 300 feet without once looking to the rear, and especially when the sense of hearing is rendered practically useless by the noise of a long freight train passing over an adjoining track.

"It is, however, urged that the proximate cause of the injury was the failure of the servants of the defendant to ring the bell of the engine, and not the carelessness of the plaintiff in walking on the track without looking for the engine. It is said that, if the bell had been rung, the plaintiff would have heard it, and have avoided the danger, and that he had a right to rely on the expectation that the defendant's servants would comply with the ordinance and ring the bell, and therefore he should be permitted to recover. This position is untenable.

"First. The question here is not whether the negligence of the defendant or that of the plaintiff is the more

proximate cause of the injury, but whether or not the negligence of the plaintiff directly contributed to it.    An effect often has many proximate, and many remote, causes.    If the negligence of the plaintiff was one of the proximate causes of the injury, if it directly contributed to the unfortunate result, he can not recover, even though the negligence of the defendant also contributed to it.    In such a case the plaintiff can recover only when the defendant's negligence is the only proximate cause of the injury.    No argument is required to show that the negligence of the plaintiff in this case directly contributed to this injury.    It was negligence for him to step upon this track without looking to the west; it was negligence for him to walk upon the track 300 feet without looking behind him.    If he had looked to the west or the rear he would have seen the coming engine, and would not have been injured.    In the absence of his own negligence, no act of the defendant would have harmed him.

"Second.    The negligence of the plaintiff was the more proximate cause of this injury.    The proximate cause is not always, nor generally, the act or omission nearest in time or place to the effect it produces.    In the sequence of events there are often many remote or incidental causes nearer in point of time and place to the effect than the efficient moving cause, and yet subordinate to it, and often themselves influenced, if not produced, by it.    Thus, a defect in the construction of a boiler of an engine may long exist without harm, and yet finally be the proximate cause of an explosion to which the climate, through the negligence of the engineer, and other incidental causes nearer by years to the effect, may contribute.    Cases illustrating this proposition are Railway Co. v. Callaghan, 56 Fed. Rep. 988; Railway Co. v. Kellogg, 94 U. S. 469; Insurance Co. v. Boon, 95 U. S. 117, 130; Lynch v. Nurdin, 1 Q. B. 29; Illidge v. Goodwin, 5 Car. & P. 190, 192; Clark v. Chambers, 3 Q. B. Div. 327; Pastene v. Adams, 49 Cal. 87.    That negligence is the proximate

cause of an injury from which the injury might and ought to have been foreseen, or reasonably anticipated, under the circumstances, as its probable result.   That negligence which sets in motion a train of events that in their natural sequence might, and ought to be expected to, produce an injury, if undisturbed by  any independent intervening cause, is the proximate cause of that injury.   [Railway Co. v. Elliott, 55 Fed. Rep. 949; Railway Co. v. Kellogg, 94 U. S. 475; Hoag v. Railway Co., 85 Pa. St. 293, 298, 299.]

"It goes without saying that injury from engines or cars can be, and ought to be, foreseen or anticipated as the probable result of walking across or upon a railroad track in frequent use, without looking both ways and listening for approaching engines.   This is demonstrated by the fact that so universal is this experience that it has become a settled rule of law that such action is negligence.   It was the negligence of this plaintiff in walking on the railroad track without looking to the west, that put in motion the train of events that led to this disaster.  He voluntarily placed himself in the dangerous situation.  He knew his danger.  The servants of the defendant were not advised of his position or of his danger, and they had a right to rely on the expectation that he would obey the law and discharge his duty.   His greater knowledge imposed upon him the duty of greater care than was required of them.   The natural and inevitable result of his continuance upon this track was a collision with an engine, unless some new cause intervened to prevent it.   Without the intervention of such cause, the accident was only a question of time.   The engine was certain to come.   The only chance of his escape was that some independent cause, such as his own care and action, or the defendant's watchfulness, would intervene to turn aside the natural sequence of events, and to take him from the track before the engine passed over it. No independent cause did intervene, and his own negligence was permitted to work out the unfortunate result.   It is cer-

tain that this result could not have been attained unless the plaintiff had first been negligent.    It may be true that it would not have resulted if the bell had been rung.    But, if this be so, the failure to ring the bell was not an independent intervening cause; it was entirely dependent for its evil effect upon the precedent negligence of the plaintiff in walking along the track without using his eyes.    If he had not been careless, he would not have been on the track, and the failure to ring the bell could not have injured him.    The negligence of the defendant's servants was at most concurring or succeeding negligence, which simply failed to interrupt the natural sequence of events, and permitted plaintiff's breach of duty to work out the disastrous result of which it was the primary and efficient cause.    The injury was the natural result of the plaintiff's own carelessness, and the jury should have been instructed to return a verdict for the defendant."

Elliott on Railroads (vol. 3, sec. 1175, p. 1792) discusses and disposes of the subject in this masterful way:

"Although, as we have already shown, the general rule is that contributory negligence will defeat a recovery, yet there is an exception to the rule, or perhaps it would be better to say that the rule does not apply, where the injury is wilfully inflicted or the failure of the company to exercise reasonable care after discovering the traveler's peril is the proximate cause of the injury.    In this connection, however, it is necessary to bear in mind the rule that the company, or its employees, have a right to presume, under ordinary circumstances, that an adult who is upon or near the track and apparently able to take care of himself will do so and stay off or get off in due time.    Some of the courts, misapplying, as we think, the doctrine of an old English case, have held that the company is liable not only where it discovers the danger of the traveler in time to avoid the effect of his negligence, and fails to exercise reasonable care to avoid it, but also where it fails to exercise reasonable care to look out for the

traveler and thus fails to discover his danger in the first instance or if it might, in any event, have avoided the consequences of the plaintiff's negligence by the exercise of reasonable care. It seems to us that this doctrine is much like the exploded doctrine of comparative negligence and that, unless it is limited in its application, it loses sight of the element of proximate cause and virtually nullifies the doctrine of contributory negligence. We think the better rule is that, except where the injury is wilfully inflicted, or is inflicted under such circumstances as to amount to wilfulness, the rule that contributory negligence is a good defense applies without qualification unless the company is guilty of negligence subsequent to that of the plaintiff and not merely contemporaneous and concurrent with that of the plaintiff. In other words, while the company may be liable where it fails to exercise reasonable care by which it could have avoided the consequences of the plaintiff's negligence after discovering it and his danger, or if reasonable care requires that it should have made such discovery after the plaintiff had negligently incurred the danger and it fails to do so and to use reasonable care by which injury could have been avoided, yet it is stating the rule too broadly to say that the company is liable if it might have avoided the injury or the consequences of the plaintiff's negligence by the exercise of reasonable care."

Beach on Contributory Negligence (3 Ed. sec. 54), in speaking of the prior negligence of the plaintiff and the subsequent negligence of the defendant, says:

"It is sometimes said to be the rule that a plaintiff may recover, notwithstanding the fact that his own negligence exposed him to the risk of injury, if the defendant, after becoming aware of the plaintiff's danger, failed to use ordinary care to avoid injuring him, or, as Judge Thompson, puts it: 'perhaps a better expression of this rule is that, although the plaintiff has negligently exposed himself or his property to an injury, yet if the defendant, after discovering

the exposed situation, inflicts the injury upon him, through a failure to exercise ordinary care, the plaintiff may recover damages.' This is but another attempt to make sense out of the rule laid down in the case of Davies v. Mann, and to make it square with the recognized and unquestioned rules of law which obtain upon the subject of contributory negligence. As it is first formulated above it is equivalent, for practical purposes, to the rule that when the defendant's negligence is the proximate cause of the injury, while that of the plaintiff is only a remote cause or a mere condition of it, the action will lie. This, as has been shown, is a correct rule, and it is correctly expressed. As used in this sense 'prior' and 'subsequent' are very nearly, and often exactly, equivalent to proximate and remote; 'prior negligence' will usually be found substantially the same as negligence that is regarded as a remote cause, and 'subsequent negligence' means, ordinarily, in the judge's opinion, the negligence that did the mischief, which is more usually known as negligence which is a proximate cause."

And the same author in section 55, further refers to the subject as follows:

"On the other hand, the author ventures to suggest that the rule, as stated by Judge THOMPSON, is only an indifferent way of saying that, when the defendant's negligence is willful, the plaintiff's contributory negligence is not a defense. When one, after discovering that I have carelessly exposed myself to an injury, neglects to use ordinary care to avoid hurting me and 'inflicts' the injury upon me as a result of his negligence, there is very little room for a claim that such conduct on his part is not willful negligence. The author believes, as he has already suggested, that every case in the reports which assumes to rest upon the rule that the prior negligence of the plaintiff is not a defense to the subsequent negligence of the defendant, where a correct conclusion has been reached, will be found to turn upon one or the other of

the elementary propositions. When the plaintiff in these cases is held entitled to recover, it will appear either that the defendant's negligence was willful, or that it was the proximate cause of the injury. If this be true, nothing is gained by stating the rule in this way. It begets confusion in expression and in thinking. And moreover as an abstract proposition of law, it is open to the criticism that, whether we express it in one way or the other, and either with or without Judge THOMPSON's discovery clause, it ignores the principle upon which the law of contributory negligence has been made to rest, and proceeds upon the theory of punishment. The tendency of it is to unsettle and confuse established principles. The culmination of it is 'comparative negligence.'"

In Guenther v. Railroad, 95 Mo. l. c. 297, BRACE, J., tersely and pithily stated the rule as follows: "The death of Guenther, resulting from the concurrent acts of negligence of defendant in failing to ring the bell, and of himself in being on the track, paying no heed to his situation or the approach of trains, nothing further appearing, the verdict must have been for the defendant." And it was further said:.

"And the failure of defendant's servants to so keep the bell ringing, if found to be a fact, would be an act of negligence which may have been a cause contributing directly to Guenther's death, for the injury to plaintiff resulting from which a recovery might be had, but for the further fact that the deceased, who the evidence shows was a man of mature years, in possession of all his faculties, and who, for some time, had been working in a quarry alongside the track, passing the point on the track where he was struck daily, at or about the time of day at which the accident occurred, going to his work, and who must have known that this train was due about that time, instead of walking between the two tracks, where the evidence shows there was ample space to walk with safety, even when trains were passing each other on these

tracks, on a bright morning, in broad daylight, entered upon the track, the view of which was unobstructed for several hundred yards, and continued to walk on it, without looking or listening for an approaching train, or paying any attention whatever to his situation, was also guilty of such negligence contributing directly to his death as would prevent a recovery, and the verdict of the jury must have been for the defendant, unless it further appeared that, after the deceased had, by his negligence, exposed himself to peril, the defendant's servants became aware of his perilous situation, or by the exercise of ordinary care, might have discovered it, in time to have avoided injuring him, and thereafter, immediately before, and up to the time of actual collision, failed to use the means within their power with a proper degree of care consistent with the safety of those on board the train, to avoid killing or injuring him (Donahue v. Railroad, 91 Mo. 357; Donahue v. Railroad, 83 Mo. 543; Bergman v. Railroad, 88 Mo. 679; Kelley v. Railroad, 75 Mo. 138; Harlan v. Railroad, 65 Mo. 22); and what would be due care under such circumstances would necessarily be a question for the jury under proper instructions.

"The plaintiff had no case on the evidence, unless the facts brought it within this qualification of the general rule on contributory negligence, and the court properly so declared in the first instruction."

In Kellny v. Railroad, 101 Mo. 73, the court instructed the jury for the defendant that if, "at and just before the alleged injury, the plaintiff was not exercising ordinary or proper care to avoid injury or danger . . . . your verdict should be for the defendant," and for the plaintiff the court instructed the jury that if the train was running at a greater rate of speed than six miles an hour, and if it had not been so running it could have been stopped in time to prevent the accident, after the defendant saw, or by the exercise of ordi-

nary care could have seen the plaintiff's danger, the verdict should be for the plaintiff. BRACE, J., said:

"The second was the only instruction given presenting a theory upon which the jury were authorized to find for the plaintiff and it seems to us that it cuts the throat of the first. In the first the jury are told as a matter of law that the plaintiff was guilty of an act of negligence that contributed to his injury, therefore he can not recover; nevertheless they were told in the second, that if they find that the defendant committed an act of negligence which also contributed to his injury, but which would not have done so if it had not been committed, then they will find for the plaintiff.

"The whole theory of plaintiff's case was that he was injured by the negligence of defendant in running its train at a greater rate of speed than six miles an hour; that this act was the sole direct cause of his injury; now while to find the fact that, if the defendant had not been running its train at a greater rate of speed than six miles an hour, the injury would not have occurred, is to find a fact tending to prove that the running of the train at a greater rate of speed than six miles an hour was a cause of plaintiff's injury, how can it make such excessive running any more than a contributory cause, when plaintiff's act was also there and then present at the same time contributing to the injury? The instruction presents this strange anomaly, that, if the jury find that the wagon was struck by reason of the fact that said train was then running at a rate of speed greater than six miles an hour, and by reason of the fact that the plaintiff was negligently on the track, the plaintiff can not recover, on the ground that defendant's negligence was the sole cause of the injury, because of plaintiff's contributory negligence, but, if they find that if the train had not been running at a greater rate of speed than six miles an hour the plaintiff wouldn't have been struck, then the plaintiff can recover, although the injury was the joint product of plaintiff's act of negligence

and this very negligent act of defendant. How can the fact that the injury would not have resulted if the defendant had not committed the act of negligence change the character of the injury which actually did occur as the joint product of plaintiff's and defendant's contributive acts of negligence as assumed in the instructions?

"We know of but one exception to the rule that where an injury is the product of the joint concurring acts of negligence of both plaintiff and defendant the plaintiff can not recover, and that is an exception made, on grounds of public policy and in the interest of humanity, to prevent and restrain as far as may be a willful, reckless or wanton disregard of human life or limb, or property, *under any circumstances,* and that is when the injury was produced by the concurrent negligent acts of both plaintiff and defendant, yet if the defendant, before the injury, discovered or by the exercise of ordinary care might have discovered the perilous situation in which the plaintiff was placed, by the concurring negligence of both parties, and neglected to use the means at his command to prevent the injury, then his plea of plaintiff's contributory negligence shall not avail him. This exception proceeds not upon the theory that the defendant has been guilty of another and independent act of negligence which is the sole cause of the injury and which must be charged as a separate and independent cause of action, but upon the ground that the negligence he was then in the very act of perpetrating was characterized by such recklessness, willfulness, or wantonness as that he shall not be heard to say that the plaintiff was also guilty of contributory negligence."

This doctrine, that contributory negligence is no defense to an injury wantonly inflicted, is also stated in Shearman & Redfield on Negligence (5 Ed.), sec. 64, as follows:

"The rule excluding a recovery in cases of contributory negligence is of course only applicable to actions founded upon negligence. It is universally conceded that the great-

est contributory fault, including a willful trespass, is no defense to an action for willful injuries.   Thus a trespasser upon a railroad train, or street car, who is pushed off, or forced, or frightened, into jumping off, while the train is in motion, is not debarred from recovery by his own fault, either in originally entering the car, or in quitting it, while in motion.  .Contributory negligence is as good a defense to a claim founded upon gross negligence, as to any other; except where such negligence is so wanton and reckless, as to imply a willingness to injure, or entire indifference to consequences. Yet this, after all, is only another form of stating the well-known rule in Davies v. Mann, that is, that even a trespasser can recover for any want of ordinary care in avoiding injury to him, after his presence is known to the defendant."

The same rule is laid down in Beach on Contributory Negligence (3 Ed.), sec. 64, where the author says:

"When the wrong doing of the defendant is merely negligence, the contributory negligence of the plaintiff may, as is well understood, operate as a defense, but when the defendant's conduct is willful, it is no longer negligence, and when the injury sustained by the plaintiff is the result of the wanton and willful act of the defendant, the question of the plaintiff's contributory negligence as a defense can not arise.  In order to constitute contributory negligence on the part of the plaintiff, there must be negligence on the part of the defendant. It is accordingly the settled rule that when the defendant's conduct amounts to willfulness, and when the mischief is occasioned by his intentional and wanton wrongdoing, the plaintiff's negligence is no defense.   Thus, in a late case in Illinois, it was said: 'If the injury to the plaintiff was caused by the needless and reckless, willful or wanton, sounding of the whistle, her negligence in approaching the crossing and driving so close to the track as to cause her team to be

frightened by the cars in no way affects her right to recover.' "

All will agree that one person is liable if he intentionally and wantonly injures another. But in order to be intentional or wanton there must be *actual knowledge* of the danger to the other person and *actual intent* to injure him. The incongruity in the rule as so announced by the text writers and the courts is in mixing negligence with wantonness and then making the defendant liable, notwithstanding the contributory negligence of the party injured, in this, that with wantonness is also mixed the element of negligence in not discovering the other's danger in time to have averted the injury, when by the exercise of ordinary care it could have been discovered. If this element of negligence of the defendant is allowed to be considered at all, then all reason, common sense, logic and fairness demands that the plaintiff's contributory negligence shall also be submitted to the jury. All of which only proves that no such elements should be mixed and that the exception to the ordinary rules should be confined to cases of pure wantonness on the part of the defendant.

And Beach on Contributory Negligence (3 Ed.), sec. 62, points out very clearly the difference between *negligence* and *wantonness* as follows:

"The distinction between these two grades of fault is suggested in a famous New York decision, in which BEARDSLEY, J., says: 'Negligence, even when gross, is but an omission of duty. It is not designed and intentional mischief.' Notwithstanding the confusion in the use of these terms in the earlier cases, there is, it is believed, a somewhat settled and determined meaning for each of them as they are used by the judges at present. By negligence is meant ordinary negligence, a term the significance of which is reasonably well fixed. By gross negligence is meant exceeding negligence, that which is mere inadvertence in the superlative

degree. It is a convenient designation of a real thing, and in this sense gross is merely intensive and not 'vituperative.' By willful negligence is meant not strictly negligence at all, to speak exactly, since negligence implies inadvertence, and whenever there is an exercise of the will in a particular direction, there is an end of inadvertence, but rather an intentional failure to perform a manifest duty, which is important to the person injured in preventing the injury, in reckless disregard of the consequences as affecting the life or property of another. Such conduct is not negligent in any proper sense, and the term 'willful negligence,' if these words are to be interpreted with scientific accuracy, is a misnomer. It is, however, the name which the courts have fastened upon a fault of that character, and by which it is most usually designated in the reports."

When, however, the rule, as so laid down, in all the cited cases, except Kirtley v. Railroad, 65 Fed. Rep. 393, and Mo. Pac. Railroad Co. v. Moseley, 57 Fed. Rep. 922, and Watson v. Railroad, 133 Mo. 1. c. 250, above referred to and the Missouri cases following that case, has been reduced to its proper understanding and extent of holding a defendant liable for wanton or intentional injuries, there is yet another element necessary to be borne in mind and submitted to the jury along with the wantonness of the defendant, and that is the wantonness of the plaintiff. For if the plaintiff is also wanton, his wantonness must logically and fairly offset the defendant's wantonness as effectually as his contributory negligence offsets the defendant's negligence. In other words, if the case is not one of negligence, but one of wantonness, then the wantonness of both parties must be taken into account, for there can no more be comparative wantonness than there can be comparative negligence, and comparative negligence has never been recognized in this State. [Hurt v. Railroad, 94 Mo. 1. c. 264.]

This principle is recognized by Beach on Contributory Negligence (3 Ed.), sec. 37, where he says:

"While it is unquestionably true that one may voluntarily and unnecessarily expose himself, or his property, to danger without thereby becoming guilty of contributory negligence as matter of law, it is, nevertheless, an established rule that, where one does knowingly put himself or his property in danger, there is a presumption that he, *ipso facto*, assumes all the risks reasonably to be apprehended from such a course of conduct, as where one goes voluntarily upon a railway track, without keeping watch, at a point where it is known to be especially dangerous, or ventures upon a bridge, track, or highway which he knows to be defective or unsafe. And where one knowing the danger temporarily forgets it, and in consequence suffers, his forgetfulness will not avail him as an excuse. What he knows he must remember at his peril, and not to remember is contributory negligence if it occasions the injury. Knowledge, however, in this respect, does not necessarily constitute contributory negligence. It is plain that one may exercise due care with full knowledge of the danger to which he is exposed or to which he lawfully exposes himself. This certainly is not contributory negligence. When knowledge is fastened upon the plaintiff, it is presumptive evidence of contributory negligence; but it is a disputable presumption and may be rebutted by proper evidence of the exercise of ordinary care under the circumstances."

But will it be said that human imagination can not conceive a case of wantonness on the part of both parties? The answer is plain. Wantonness by both parties is just as conceivable as negligence by both parties. But a single illustration will suffice to point the rule. A man determines to commit suicide. He has no property and no life insurance. He will leave his family destitute. To provide for his family, he

lies down on a railroad track.   The track is straight and the engineer can easily see the man on the track, in time to stop the train before killing him.   Instead of doing so he intentionally and wantonly increases the speed of the train and runs over the man.   The widow or children sue the railroad company for damages, and upon proof that the railroad employees wantonly inflicted the injury, they recover a verdict, and thus the deceased has provided for his family at the same time he has carried into effect his intentional or wanton purpose to destroy himself.   The wantonness of the defendant is made the sole determining factor in the solution of the problem of liability, and the wantonness of the deceased is not considered or taken into account, when if it had been the result would necessarily have been the same as in a case of negligence and contributory negligence.

The result is that in attempting to establish a new branch of the law, based upon humanitarian principles, the courts have taken a step with one foot but have left the other foot sticking in the mire of negligence.   If wantonness is not negligence, as I believe, then the wantonness of both parties must be left to the jury under proper instructions. There has been too much laxity in giving instructions of this character.   No instruction basing a right to recover upon wantonness should be given unless the pleadings raise an issue of wantonness as distinguished from negligence, and unless there is substantial proof to support such an issue.  The common practice of giving such instructions when no such issue is raised, and there is no evidence to support such a claim, has caused much of the confusion and incongruity that exists in the law, and the failure of courts and judges and text writers to distinguish between negligence, that is, the want of ordinary care, and wantonness, that is, intentional injury purposely inflicted, is responsible for the balance of such confusion.

Let us hope that as all other sciences have advanced and cleared up the darkness in other directions, that the science of the law in this regard may likewise soon advance and throw the light of reason upon this question.

In the case at bar there is no allegation in the petition that the defendant was guilty of any wantonness or intentional wrong knowingly done. The case is one of negligence in its original and correct sense; that is, the plaintiff charges the defendant with having been guilty of negligence and the defendant charges the deceased with having been guilty of contributory negligence. No issue of wantonness on either side is presented by the pleadings in the case, nor is there any substantial evidence of wantonness on either side. For this reason the second and fourth instructions given for the plaintiff are erroneous. And as it is conceded that the deceased was guilty of "prior negligence," that is, contributory negligence, and as there is no allegation or proof of wantonness in the case, it follows that the plaintiff is not entitled to recover at all, and therefore as the jury found for the defendant, and that verdict is in accordance with the true law, the trial court erred in granting the plaintiff a new trial, no matter what errors of law the court committed in giving or refusing instructions. [Pritchard v. Hewitt, 91 Mo. l. c. 550; Overholt v. Vieths, 93 Mo. l. c. 426; Leahy v. Davis, 121 Mo. l. c. 236; Dowd v. Air Brake Co., 132 Mo. 579.]

Moreover, the defendant's instructions followed the humanitarian doctrine as heretofore declared by this court (except Watson's case) and therefore the trial court erred in declaring those instructions erroneous, and as the jury found the fact to be that the defendant was guilty of no wantonness or willfulness (which the trial court approved) and as the instructions for defendant were proper under any view heretofore announced by this court, the new trial should not therefore have been made.

## II.

The trial court granted a new trial for error in giving the instructions for defendant above set out.   These instructions conform strictly to the rules of law heretofore uniformly announced by this court, including the humanitarian doctrine referred to making the defendant liable notwithstanding the contributory negligence of the deceased, if the defendant saw or by the exercise of ordinary care could have seen the danger to the deceased in time to have prevented the injury.   They do not express or refer to the corresponding duty of the deceased after he was in danger, but the plaintiff can not complain of this omission, as it was favorable to her.   The degree of care required by these instructions is ordinary care, which was properly declared by the seventh instruction given for the plaintiff to mean "such care as persons of ordinary prudence under the same or similar circumstances would use."   The 2d, 3d, and 4th instructions given for the plaintiff, however, were predicated upon the degree of care required by the city ordinance pleaded and offered in evidence by the plaintiff, and the action of the trial court in granting a new trial because of the giving of said instructions for the defendant can only be interpreted as meaning that those instructions and instructions 2, 3 and 4 given for the plaintiff were in conflict, in this, that defendant's instructions measured the defendant's liability by the rules of the common law and the decisions of this court above referred to, while the plaintiff's said instructions measured its liability by the city ordinance, and that the trial court thought the latter the true rule.

If as the plaintiff pleaded, the defendant agreed to obey the city ordinance as a part of the consideration for the grant of its franchise, or for any other valuable consideration, it would be bound thereby and would be liable for violating its

contract, but if no such contractual relation existed and the defendant had never agreed to be bound by the ordinance, then the defendant is liable only under the common law, for the city can not by ordinance create a right of action between third persons, nor enlarge the common-law or statutory liability of citizens *inter sese*. [Sanders v. Railroad, 147 Mo. 411; Byington v. Railroad, 147 Mo. 673; Badgley v. St. Louis, 149 Mo. 122; Murphy v. Lindell Ry. Co. 153 Mo. 252]. The principles announced in these cases are not new in this State but are precisely what was previously held by this court in Fath v. Street Ry., 105 Mo. 537; Senn v. Street Ry., 108 Mo. l. c. 152; Kansas City v. Corrigan, 86 Mo. 67; Norton v. St. Louis, 97 Mo. 537; St. Louis v. Ins. Co., 107 Mo. 92; that is, that the city can not by ordinance enlarge the common-law liability of the railroad company or of any citizen either to the city or among citizens *inter sese*, and that this can only be done by a contract agreed to by the company or citizen sought to be charged. If the city could, by ordinance, create such a right of action or enlarge the common-law liability of itself or of others, it could likewise diminish the common-law liability of itself or of others or could abolish it entirely, and if it could create a right of action theretofore unknown to the law, it could wipe out or abolish a right of action theretofore afforded by the laws of the State. No one would contend that this power exists. Yet there is no difference in principle between the power to create and the power to abolish.

This principle also obtains in other jurisdictions as is shown by the cases cited in the decisions of this court above quoted, and also by the cases of Louisville & Nashville Railroad v. Dalton, 43 S. W. Rep. 431, and Southern Ry. Co. v. Wood, 52 S. W. Rep. 796. The city under its police power may enact police regulations and enforce them by penalty in its own favor (Norton v. St. Louis, 97 Mo. l. c. 542), but the

violation of such ordinances does not create a civil liability in favor of one citizen and against another.    And the case of Kansas City v. Corrigan, 86 Mo. 67, establishes the rule, which common sense also requires, that liability of the person or company under a contract with the city made in consideration of a grant of a franchise, can not be enlarged by a subsequent ordinance of the city passed without his or its consent, but that except as otherwise agreed the liability is a common-law liability.    In that case the ordinance which granted the franchise, and which the defendant accepted, obligated the defendant to keep the street between the tracks in repair, and a subsequent ordinance of the city required the defendant to pave the street with specified material.    The ordinance prescribed a penalty for its violation and it was sought to uphold it under the police power of the city, but this court held that the later ordinance was not binding on the defendant because it was an interference with the contract between the city and the defendant as contained in the ordinance which granted the franchise, and which alone the defendant had agreed to be bound by.

The plaintiff here pleaded and offered the ordinance in evidence, but failed wholly to show that the defendant had ever agreed or contracted to be bound by it, and therefore this case falls clearly within the rule laid down in Sanders' case.    The plaintiff insists, however, that this case is controlled by the case of Chouquette v. Railroad, 152 Mo. 257. This is a misconception.    In the Chouquette case the ordinance under which the defendant was operating its franchise, limited the rate of speed of the cars, and the negligence charged was exceeding that rate.    It was held that the fact that the defendant was exercising the privileges and enjoying the franchises granted by the ordinance was sufficient evidence of its acceptance of the ordinance.    The case was ex-

pressly and clearly distinguished from the Sanders case, the Fath case, and the Senn case.

Exercising privileges conferred by an ordinance which places burdens and liabilities upon the person exercising them, and which privilege could not be acquired except by ordinance, is very different from being liable under a general ordinance which was in no manner made a part of or a burden attached to the ordinance granting a franchise. No contract is thereby entered into. No contractual obligation of the city or the citizens is . thereby incurred. The grantee is liable only according to the terms of the ordinance granting the franchise. If that ordinance specially imposes a liability or by reference to all general ordinances then in force requires the grantee to take the burdens thereby imposed, the grantee will be bound by it. But it will only be bound by those specified or then in existence, and will not be bound by any thereafter enacted, unless the ordinance granting the franchise expressly so stipulates.

In the case at bar there is no evidence that the ordinance pleaded, proved and upon which the plaintiff's instructions 2, 3 and 4 are predicated, was a part of the ordinance which granted the defendant's franchise (nor even that the defendant's franchise was granted by the city and not by the State prior to 1875), nor that the defendant ever accepted or agreed to be found by the general ordinance so relied on, nor when the said general ordinance was enacted, whether before or after the ordinance granting the franchise to the defendant, assuming that the defendant operates under such a franchise from the city. For these reasons, there was nothing upon which to predicate the plaintiff's instructions 2, 3 and 4, and the defendant's instructions set out herein declared the true law applicable to the case made, and the conflict between the plaintiff's and the defendant's instructions was

favorable to the plaintiff and therefore she can not be heard
to complain of it, nor to urge it as a reason for granting her
a new trial.

There is another feature necessarily present in the con-
sideration of the ordinance relied on by the plaintiff.   It is,
that the provision quoted in paragraph 4 of section 1275,
which section is a part of article 6 of ordinance 17188 (com-
monly called Revised Ordinances 1892) of the city of St.
· Louis, and that section 1280 of the same article of the same
ordinance, prescribed the penalty and punishment for a viola-
tion of section 1275, as follows:   "Any person, corporation,
company or co-partnership, or the president, superintendent
or manager thereof, violating or failing to comply with any
of the foregoing provisions of this article, except as other-
wise provided for, shall be deemed guilty of a misdemeanor,
and upon conviction thereof, be fined not less than five nor
more than five hundred dollars."   '

Thus the same act which created this new duty fixed
and limited the punishment and penalty for its violation and
no court has any right to enlarge that penalty.   And being a
penal statute intended as a general police regulation, and not
enacted for the benefit of particular persons, and not even
declaring that a violation thereof shall be negligence, it con-
ferred no new right of action between third persons.   In
other words, the ordinance is only punitive, and in no sense
to be considered as a compensatory act.

The law on this subject is thus stated in Elliott on Rail-
roads, sec. 711:

"Unless the common-law right of action is thereby
taken away in express terms or by necessary implication, the
penalty imposed by a penal statute is cumulative only, and
the common-law right of action continues to exist unim-
paired.   It may, perhaps, be laid down as a general rule that
the enactment of a penal statute does not establish a new

liability aside from the penalty denounced by the statute itself.   In other words, a penal statute can not ordinarily be regarded as the foundation of a new right of action in addition to that prescribed, and the best reasoned cases hold that the only new liability arising from the neglect of such purely statutory duty is for the prescribed penalty, except; perhaps, where the statute prescribes that the duty shall be to particular persons or to a particular class of persons, and not purely a public duty."

We have recently had occasion to consider a State statute involving the same proposition, in the case of Utley v. Hill, 155 Mo. loc. cit. 272, and it was there said:

"The statute which created the duty of making these statements to the Secretary of State, therefore, denounced the penalty for refusing to perform the duty, and also prescribed the punishment, if the statement was willfully or corruptly false.   Under this condition of the law, can it be said that any other liability or penalty can be applied than that the law itself imposes?   Can it be that in this way the common-law action of deceit has been enlarged by statute ?   Or can it be maintained that this statute overcomes the non-liability declared in the case of Fusz v. Spaunhorst ?   The first canon of construction of a statute law is that 'an affirmative enactment of a new rule implies a negative of whatever is not included or is different, and, if by the language used, a thing is limited to be done in a particular form or manner, it includes a negative that it shall not be done otherwise.'   Ex parte Joffee, 46 Mo. App. 360; Suth. St. Const., sec. 140; Wells v. Supervisors, 102 U. S. 625; 26 L. Ed. 122.   Suth. St. Const. (section 208), lays down the rule:   'When a law imposes a punishment which acts upon the offender alone, and not as a reparation to the party injured, and where it is entirely within the discretion of the lawgiver, it will not be presumed that he intended that it should extend further than

is expressed, and humanity would require that it should be so limited in construction.' Sedgwick, St. & Const. Law (2 Ed.), p. 341, et seq., points out that, 'Where a precise remedy for the violation of a right is provided by statute, it often becomes a matter of interest to know whether the statutory remedy is the only one that can be had, or whether it is to be regarded as merely cumulative, the party aggrieved having also a right to resort to his redress for the injury sustained, at common law, or independently of the statute. In regard to this we have already noticed the rule that where a statute does not vest a right in a person, but only prohibits the doing of some act under a penalty, in such a case the party violating the statute is liable to the penalty only; but, where a right of property is vested by virtue of the statute, it may be vindicated by the common law, unless the statute confines the remedy to the penalty.' And again, at page 343, the same author says: 'But on the other hand, it is a rule of great importance, and frequently acted upon, that where by a statute a new right is given and a specific remedy provided, or a new power and also the means of executing it are provided by statute, the power can be executed and the right indicated in no other way than that prescribed by the statute.' End. Interp. St., sec. 465, says: 'If the statute which creates the obligation, whether public or private, provides in the same section or passage a specific means or procedure for enforcing it, no other course than that thus provided for can be resorted to for that purpose.' This has been the rule followed in Missouri ever since the case of Riddick v. Governor, 1 Mo. 147, where it was said: 'It is an incontrovertible maxim of law, that a statute imposing a penalty for a new-created offense, or for a breach of duty, and defining the particular mode in which and before what tribunal the penalty shall be recoverable, must be strictly pursued.' And then, pointing out that the act under consideration imposed a new duty

upon sheriffs and imposed a penalty for its violation, and prescribed the method of enforcement to be pursued and the tribunal to try the cause, the court said: 'We are at once led to the conclusion that they [the lawmakers] intended to provide, specifically, an adequate remedy for the neglect of each particular duty thereby created, and a different construction would subject the sheriff to a liability which we can not reasonably suppose he ever intended to incur.' This rule is recognized and approved in Ellis v. Whitlock, 10. Mo. 781; State v. Canton, 43 Mo. 51; Moore v. White, 45 Mo. 206. So, on the same principle, it was said by NORTON, J., in Parish v. Railroad Co., 63 Mo. loc. cit. 286: 'So far as the law is to be regarded as punitive, it should be strictly pursued, and so as not to enlarge the liability it imposes, nor allow a recovery, unless the party seeking it brings his case strictly within the terms or conditions authorizing it. So far as it is to be considered as compensatory for an injury done, it is to be construed as any other statute.' This question is set at rest, however, in People's Ry. Co. v. Grand Ave. Ry. Co., 149 Mo. loc. cit. 253, 50 S. W. Rep. 829."

The result is the same whether the law be a police regulation enacted by the State or by a city under its delegated power from the State. If the act is penal, and purely punitive and not enacted for the especial benefit of any particular person or class of persons, but simply to regulate the conduct of the defendant towards the community as a whole, no other liability follows a violation than that the law itself imposes.

The judgment granting the plaintiff a new trial is therefore erroneous, and that judgment is reversed and the cause remanded to the circuit court with directions to set that judgment aside, to overrule the motion for a new trial, and to enter judgment on the verdict in favor of the defendant. It is so ordered.

*Brace, P. J.*, and *Robinson, J.*, concur in the result.

*Valliant, J.*, concurs in the result for reasons given in a separate opinion, but dissents from the doctrines announced in both paragraphs, of this opinion.

SEPARATE OPINION.

VALLIANT, J.—The testimony shows that the plaintiff's husband was guilty of such negligence as would preclude a recovery unless she could maintain her proposition that the motorman saw her husband's peril in time to have averted the accident if he had exercised reasonable care but failed to do so. The exception in the law of negligence which permits a recovery notwithstanding the contributory negligence of the party injured, holds the defendant liable, if after he sees the party in peril, or (in case it is his duty to be on the lookout) if, by the exercise of ordinary care he might have seen him in time and have averted the accident but failed to do so. But that exception has not gone farther than to hold the defendant under such circumstances liable for a failure to exercise ordinary care. In Schmidt v. Railroad, 149 Mo. 269, an instruction was criticised which seemed to require of the gripman more care to observe one approaching the track than to avert the accident after the peril was discovered. It was there said that in placing the two terms "vigilant watch" and "ordinary care" in juxtaposition in the same instruction rendered it apparently self-contradictory and misleading, creating the inference that there was a difference between the vigilant watch to be observed in the one instance and ordinary care in the other. But it was endeavored there to show that under the circumstances of that case there was no such difference, that ordinary care under those facts demanded vigilant watch, and that the error in the instruction was in arraying, as it were, the two terms against each other. It was said that the instruction would have been well enough if there had been a sufficient defini-

tion of the term "ordinary care," but that the definition given (which was the usual stereotyped form and correct as a generality) was not sufficient for the purpose of enlightening the jury as to the meaning of the term as used in that connection. The effort in that case was to show that what would be ordinary care under some circumstances would fall short of it in others and that when a jury was being instructed on the subject it should be given something concrete rather than mere generalities. But that case is no authority for the contention that when the plaintiff has been guilty of contributory negligence more than ordinary care is required of the defendant to avert the accident under the circumstances of that or of this case. And as to this case, if a more applicable definition of ordinary care was not given, it is not the fault of the defendant, because the definition that was given was at the request of the plaintiff. The verdict of the jury was amply supported by the evidence and there is no error in the instructions of which the plaintiff has a right to complain. Therefore although I do not agree to either of the doctrines so ably expressed in the foregoing opinion, I concur in the result.