## VAN BACH v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

### Division One, December 24, 1902.

Contributory Negligence: RAILROAD CROSSING: LOOKING: APPREHENDING DANGER. Plaintiff's husband, who was approaching a railroad crossing over a public street, may have seen defendant's train which had crossed the street, the end of its last car having passed 120 feet beyond, and may have naturally inferred that it would continue to go that way, but instead, a car was detached and kicked back to make a flying switch on the other side of the street, and a second car, thus detached and driven back, without any switchman thereon, struck him and killed him. There was nothing to prevent him from seeing the train as far as it went, and had he looked he could have seen the approaching car in ample time to have avoided the accident, but instead of doing so he looked the other way, and did not look towards the coming car until it was actually upon him. *Held*, first, that, if the trainmen saw deceased going headlong into danger with every indication that he was either oblivious to the situation or reckless of the consequences, the duty devolved upon them to make an effort to avert the accident; second, as there was no reason to suppose the man would act in that way, as he was coming directly towards the track in his buggy, with an unobstructed view, and nothing in his conduct to lead them to infer that he did not see the detached car, they had a right to infer that he did see it, and that he would stop in time to avoid a collision; therefore, their failure to stop the car under those conditions was not such wanton disregard of human life as would render the defendant liable

in spite of the contributory negligence of the plaintiff's husband, and these facts being shown by plaintiff's witness, a demurrer to plaintiff's case should have been sustained.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

REVERSED.

*Elijah Robinson* for appellant.

But for the grossest kind of negligence on the part of plaintiff's husband, the accident would not have occurred. It was clearly and conclusively shown by the testimony of plaintiff's own witnesses, as well as by the testimony of the witnesses for the defendant, that plaintiff's husband, while at any point within sixty-five feet of the place where the accident occurred, if he had looked, could have seen the car approaching in time to have stopped and avoided the accident. The court should, therefore, have sustained defendant's demurrer to the evidence. Tabor v. Railroad, 46 Mo. 353; Fletcher v. Railroad, 64 Mo. 484; Harlan v. Railroad, 64 Mo. 480; Henze v. Railroad, 71 Mo. 476; Pearl v. Railroad, 72 Mo. 168; Turner v. Railroad, 74 Mo. 602; Kelly v. Railroad, 75 Mo. 138; Lenix v. Railroad, 76 Mo. 86; Hixon v. Railroad, 80 Mo. 340; Stepp v. Railroad, 85 Mo. 229; Kelley v. Railroad, 88 Mo. 534; Butts v. Railroad, 98 Mo. 272; Hanlon v. Railroad, 104 Mo. 381; Dlauhi v. Railroad, 105 Mo. 645; Boyd v. Railroad, 105 Mo. 371; Weller v. Railroad, 120 Mo. 636; Baker v. Railroad, 122 Mo. 572; Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 362; Lane v. Railroad, 132 Mo. 4; Huggart v. Railroad, 134 Mo. 497; Payne v. Railroad, 136 Mo. 562; Culbertson v. Railroad, 140 Mo. 35; Schmitt v. Railroad, 160 Mo. 43; Tanner v. Railroad, 161 Mo. 497; Kelly v. Railroad, 18 Mo. App. 151; Hickman v. Railroad, 47 Mo. App. 74; Drake v. Railroad, 51 Mo. App. 466; Masterson v. Railroad, 58 Mo. App. 572; Caldwell v. Railroad, 58 Mo. App. 453; McCall v. Railroad, 54 N. Y. 642; Rodrian v. Railroad, 125 N. Y. 526; Chase v. Railroad, 78 Maine 346; Allen v. Railroad, 19 Atl. 105; Hayes v. Railroad, 47 Mich. 401; Mahlen v. Railroad, 49 Mich. 585; Mynning v. Railroad,

64 Mich. 93; Gardner v. Railroad, 56 N. W. 603; Kwiotlkowski v. Railroad, 70 Mich. 551; Ferguson v. Railroad, 63 Wis. 145; Seefeld v. Railroad, 70 Wis. 216; Mantel v. Railroad, 33 Minn. 62; Clark v. Railroad, 50 N. W. 365; Schmolze v. Railroad, 53 N. W. 743; Railroad v. Stommel, 25 N. E. 863; McCrary v. Railroad, 31 Fed. 531; Tucker v. Duncan, 9 Fed. 867; Myers v. Railroad, 24 Atl. 747; Smedis v. Railroad, 88 N. Y. 13; Harris v. Railroad, 41 Iowa 227; Benton v. Railroad, 42 Iowa 192; Schaefert v. Railroad, 62 Iowa 624; Railroad v. Holmes, 3 Wash. 202; Fleming v. Railroad, 49 Cal. 253; Merkle v. Railroad, 49 N. J. L. 473.

*Alden & McFadden* and *Fyke Bros., Snider & Richardson* for respondent.

The negligence of defendant is not denied. The only question is whether or not the deceased was guilty of negligence which directly contributed to his death. Whether he was so guilty was a question for the jury. Weller v. Railroad, 164 Mo. 180. Even if deceased was guilty of contributory negligence, the defendant is liable if it failed to use the means at its hand to save him, when, by the exercise of ordinary care, it would have discovered his peril in time to have done so. Morgan v. Railroad, 159 Mo. 263; Mapes v. Railroad, 67 N. Y. S. 358, 56 App. Div. 508; Matthews v. Toledo, 21 Ohio Cir. Ct. Rep. 69. It was clearly the duty of defendant, in making flying switches across a highway, where so many people were crossing, to have had some one on top of the car to see that the way was clear before the kick was made, and to keep the car under control. And it was the duty of its flagmen to see that no signal was given whilst persons were crossing. The evidence fairly shows that the deceased saw the train going east, and that he naturally supposed it would continue in that direction; and the evidence also fairly shows that the flagmen negligently failed to see deceased until he had crossed the Wabash tracks, and that they gave the signal to the foreman to have the car kicked while de-

ceased was attempting to make the crossing; and that while deceased was in that perilous position the car was suddenly kicked with great force, and hurled upon him. O'Connor v. Railroad, 94 Mo. 150.

VALLIANT, J.—Plaintiff's husband was killed at a railroad crossing in a public street in Kansas City, through the negligence, as plaintiff alleges, of the servants of defendant in handling a freight train.

Plaintiff's evidence tended to show the following facts: Hickory street runs north and south, Union avenue crosses it at right angles. Defendant owns two railway tracks crossing Hickory street diagonally from southwest to northeast, near the intersection of Union avenue. The space between these two tracks is eight feet. South of and parallel to defendant's tracks are two other railway tracks, between which is a like space of eight feet, belonging to the Wabash Railroad Company. The space between the tracks of the defendant and those of the Wabash is twelve and a half feet. The following diagram represents the location of the tracks and the scene of the accident:

Plaintiff's husband driving alone in a one-horse buggy approached Hickory street from the east on Union avenue. He was aiming to go north on Hickory street, and the inference may be drawn from plaintiff's testimony that when he reached Hickory street he turned north, and drove on in that direction until he reached the north track of defendant, when he was struck by a freight car, which had been detached from the train and kicked to make a flying switch across Hickory street to defendant's yards. He was driving about the middle of Hickory street at a speed which the witness called a jog trot. The horse cleared the crossing, but the car struck the buggy, broke it away from the horse and carried it beyond the west line of Hickory street. The deceased was thrown out and so mangled that he died within a few minutes.

There were some buildings along the north line of Union avenue nearly up to the point where the south Wabash track crosses that line, which is about 150 feet east of the east line of Hickory street. After passing those buildings there was nothing to prevent one going as deceased was, from seeing the defendant's tracks as far east as the train in question was, and, after he reached Hickory street, he had a clear view of defendant's tracks as far east as the next street, Mulberry. This train, just before the accident, had crossed Hickory street going east, the last car in the train clearing the east line of Hickory street about 120 feet, then the work of kicking the cars back into the switch began. This was done by backing the train, during which the coupling pin was drawn to detach the car to be kicked, a shove by the engine was given, and the detached car was let to go into the switch by the force thus imparted and the rest of the train was pulled forward again for another such flying switch. One car of this train had thus been switched across the street and the crew were in the act of switching the next car when the accident occurred. There was no brakeman on the detached car.

There were two witnesses for the plaintiff, who

saw the accident; one of them viewed from a point north of the tracks in the angle near where the north track crosses the east line of Hickory street.    He was facing north talking to a man who was facing south, and observing in this man's countenance a sudden expression of alarm turned around and then saw the plaintiff's husband in his buggy approaching the crossing and saw the detached car coming to the same point.    At that instant the horse was near the defendant's south track, the buggy just north of the Wabash track, and the car about thirty feet from the point of collision.    The witness said the car was going about eight miles an hour, but he said he had no means of fixing the speed and it was only a guess.    When the witnesses turned and saw the situation the man in the buggy had his face towards the west; he turned towards the car just as the accident occurred.    If he had looked when the witness first turned and saw him he would have seen the car in time to have stopped.    The accident occurred about four o'clock in the afternoon, October 3, 1899.

The plaintiff's other witness to the scene viewed it from a point in the space between the tracks of the defendant and those of the Wabash near the west side of Hickory street in its intersection with Union avenue. This witness was walking north aiming to reach a place two squares north of the railroads.    He saw the train pull east, it was a freight train of ten or twelve cars, then he saw it shoved back and this car cut loose, kicked back and let to run down by itself; it was cut loose from the train about two car-lengths, or seventy-two feet, east of Hickory street.    The witness seeing that the crew were thus engaged in switching cars across the street, when he reached the point above designated (between the tracks of defendant and those of the Wabash), perceiving that he could not get across the tracks before the car would be upon him, stopped to let it pass. While he stopped the plaintiff's husband drove by him going in a jog trot about four miles an hour looking straight ahead, but just as he passed witness he turned and glanced to the west, and drove on until the car

struck him.   There was nothing to prevent his seeing
the car coming, as the witness did, and if he had seen it
he could have stopped in time to have avoided the acci-
dent.   The deceased was from fifty to seventy feet
south of the crossing when this witness first saw him.

The testimony on the part of the defendant tended
to show as follows:   When the deceased, coming west
on Union avenue, reached Hickory street, he turned
south and drove about two squares to the place of bus-
iness of one of defendant's witnesses, then turned north
and drove on to the place of the accident.   If he took
that course he had an opportunity to see the crossing
and the movements of the cars before he reached the
south intersecting line of Union avenue.   The switching
of cars at the point was almost a continuous operation
every day, with sometimes an intermission of a half
hour, and frequently no intermission at all during the
whole day.   About fifty trains in a day usually passed
that point, some passing over and some switching.   The
deceased lived in that vicinity, and was accustomed to
passing over that crossing.   There were two flagmen
stationed there, who saw the danger into which the de-
ceased was moving, and both of them tried to call his
attention and stop him; they both holloed to him, one
waved his flag, and the other held a stick across in front
of the horse.

The switchman who had cut the car loose and who
was on the ground near it, also saw the peril, and ran
towards the deceased calling him to look out.   Another
man, the one who was talking to the plaintiff's witness
on the north side of the tracks, saw the danger into
which the deceased was moving, and waived his arms
and shouted to him.   But neither the situation itself
nor the efforts of these persons had the effect to attract
his attention.

At the close of the plaintiff's evidence, and again
at the close of all the evidence, the defendant asked
an instruction to the effect that under the pleadings and
evidence the plaintiff was not entitled to recover, which
the court refused.   The cause was submitted to the

jury, there was a verdict for the plaintiff for $5,000 and judgment accordingly, from which defendant appeals.

That it was negligence in defendant to make a flying switch across a public street without having a brakeman on the car to control its movement is not questioned. But conceding the defendant's negligence, can the plaintiff recover in the face of this evidence? The tendency of the evidence on the part of the defendant in the above statement is mentioned, only to show that it did not strengthen the plaintiff's case. The ruling of the trial court in refusing the instruction in the nature of a demurrer to the evidence will, therefore, be considered in the light of the plaintiff's evidence alone.

The learned counsel for plaintiff state their case thus: "The evidence fairly shows that the deceased saw the train going east, and that he naturally supposed it would continue in that direction; and the evidence also fairly shows that the flagmen negligently failed to see deceased until he had crossed the Wabash tracks, and that they gave the signal to the foreman to have the car kicked while deceased was attempting to make the crossing; and that while the deceased was in that perilous position the car was suddenly kicked with great force and hurled upon him."

That defendant's employees handling the train had as fair an opportunity to see the movements of the deceased as he had to see those of the train, is true, and if they had been on the lookout, as they should have been, and could reasonably have anticipated that he would act as he did, it would have been their duty to have made reasonable effort by use of the means at hand to avert the danger, and failing so to do the defendant would have been liable. That is to say, if they saw the deceased going headlong into danger with every indication that he was either oblivious to the situation or reckless of the consequences, the duty devolved on them to make an effort to avert the catastrophe. But in this case, what reason had the defendant's servants to suppose that this man would act as he did? Could they

infer that he did not see what was going on before his eyes? Every one else who was there, including the plaintiff's witnesses, saw what was being done. Not one of them was in a better position to observe the movements of the train and the cars than the deceased. Conceding that the flagmen ought to have signaled him to stop before he crossed the Wabash tracks, and failed to do so, or conceding that there was no watchman there at all, still if the deceased had used his eyes he would have seen all that the watchman could have called to his attention. It required no expert to understand the situation; it was a matter within common every day experience in city life. If the employees of defendant saw the deceased approaching the crossing in a slow trot, in full view of the moving cars, had they not every reason to suppose that he would stop when he had driven as close to the crossing as was prudent, and wait until the car had passed? That is what the plaintiff's witness who was going the same direction did, and that is what any reasonable man looking on would suppose any other reasonable man would do. We are referred to Morgan v. Railroad, 159 Mo. 262. But the case at bar is not that of a man walking along the track with his back to the coming train apparently oblivious to the danger. If this train crew saw the deceased coming and saw that he was in a position where he could not fail to see the car approaching the crossing if he used his sense of seeing they were not negligent if they assumed that he would act as any reasonable man would for his own protection under like circumstances, and regulated their own actions accordingly.

The learned counsel infer from the evidence that the deceased saw this train cross the street going east and concluded that it would continue in that direction and so gave no further thought to it, and turned his eyes to the west. But the plaintiff's own witnesses show that the train was backing when the deceased was at least as far away as the Wabash tracks, when he was in plain view, when every one else there saw what was doing and when he would have seen if he had used his

eyes. We are referred to O'Connor v. Railroad, 94 Mo. 150, where it is said that whilst one about to cross a railroad track is bound to watch for cars, yet he is not bound to be prepared for an act of negligence on the part of the railroad company. That is true, but when the act is in plain view, whether it be the result of negligence or not, he has no right to shut his eyes to it, walk into the danger thereby produced and then complain of it.

We are of the opinion that the plaintiff's own evidence shows that the deceased was guilty of negligence which contributed to the accident and that the circumstances were not such as would render the defendant liable notwithstanding the negligence of the deceased. Therefore, the instruction in the nature of a demurrer to the evidence should have been given. The judgment is reversed.

All concur.