MOORE, Appellant, v. LINDELL RAILWAY COMPANY.

Division One, July 2, 1903.

1. **Negligence:** DEFENDANT'S PRIMARY NEGLIGENCE: SUBSEQUENT CONCURRING NEGLIGENCE AND WANTONNESS. In a suit against a street railway for killing plaintiff's wife, an instruction for defendant was in effect that, notwithstanding defendant may have been primarily negligent, nevertheless plaintiff can not recover, if thereafter both the deceased and defendant were guilty of concurrent subsequent negligence, nor can plaintiff recover if both were guilty of negligence of such kind, character or degree as to constitute recklessness or wantonness. *Held*, not error, but a correct expression of the law.

2. ———: MUTUAL FAULT: APPORTIONMENT. If plaintiff or the party injured, by the exercise of ordinary care under the circumstances,

might have avoided the consequences of defendant's negligence, but did not, the case is one of mutual fault, and the law will neither cast all of the consequences upon the defendant, nor will it attempt any apportionment thereof.

3. ———: CONCURRENT NEGLIGENCE. The rule of law is that a plaintiff or party injured, who by his own negligence has placed himself in a dangerous position where an injury was likely to result, may still recover for such injury, if the defendant with knowledge, or such notice as is equivalent to knowledge, of plaintiff's danger, failed to exercise reasonable care by which the injury might have been avoided, unless the injury was the result of concurrent negligence of both parties.

4. ———: ———: WANTONNESS. If both the plaintiff or the party injured and the defendant are guilty of recklessness or wantonness, there can be no recovery.

5. ———: ———: ———: STEPPING IN FRONT OF CAR: EXCESSIVE SPEED: PROXIMATE CAUSE. It is such gross negligence as precludes recovery for a pedestrian to step on a street railway track directly in front of an approaching car and so close to it as to render it impossible for those in charge of the car to stop it in time to avoid injuring such person. And this is true even if the car was running at a rate of speed in excess of the maximum rate permitted by ordinance, for in such case the negligence of the injured party and not the rate of speed, is the proximate cause of the injury.

6. ———: ———: ———: ———: RECOVERY NEVERTHELESS. Where the party injured steps directly in front of a car running at an excessive rate of speed, the only question is, whether, notwithstanding such negligence on the part of the injured party, the car could have been stopped in time to have avoided the injury, to prove which the burden is on the plaintiff. And if there is no evidence that it could, by the exercise of reasonable care, have been stopped after the discovery of the pedestrian's peril, the case should be taken from the jury.

7. **Practice:** MISDIRECTION: RIGHT VERDICT. Where the verdict for defendant is for the right party, it should not be set aside even though erroneous instructions were given.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel*, Judge.

AFFIRMED.

*A. R. Taylor* for appellant.

Vol 176 mo—34

(1)    The first instruction given for defendant is fatally bad in conceding the defendant's negligence as a contributing cause, and defeating the plaintiff if the deceased was herself negligent in going upon the track, leaving out of view the whole theory of the law as settled in this State—that, although the plaintiff may be negligent in going upon a track and failing to look and listen, yet, if the defendant, by its servants in charge of the car, saw, or, by keeping a vigilant watch, could have seen, the deceased on or moving towards the track and in danger from the car and could have stopped the car and averted the injury, then defendant is liable, notwithstanding plaintiff's negligence. As the law stands now in this State, and in most of the other States, this is a correct statement of the law. Burnham v. Railroad, 56 Mo. 342; Meyers v. Railroad, 59 Mo. 231; Dunkman v. Railroad, 95 Mo. 244. The law is even extended to a trespasser upon the track. Fiedler v. Railroad, 107 Mo. 652; Guenther v. Railroad, 108 Mo. 21. "The law of this State is too thoroughly settled [for controversy] that the defendant is liable, even to a trespasser, if it fails to use ordinary care to prevent injuring him after discovering his peril." Reardon v. Railroad, 114 Mo. 406; Chamberlain v. Railroad, 133 Mo. 599; Morgan v. Railroad, 159 Mo. 280. The deceased in this case was not a trespasser. She was lawfully upon the public street at a crossing. Yet this instruction tells the jury, in substance, that if she was negligent in going across the track without looking for a car, the defendant is not liable, "even though guilty of one or the other of the acts charged." That is to say, that, although the motorman saw the woman (as he says he did, and that she was in danger, as he says), and though he could have stopped the car and averted the injury, as the instruction concedes, yet, for the sole reason that the deceased was guilty of going across the track negligently, a recovery is denied. To sustain this instruction is to over-

throw the whole settled law of this State, and, more, it would nullify the beneficent protection afforded by the ordinance requiring a vigilant watch and the stoppage of the car to prevent the killing of the citizen. (2) The second instruction given for the defendant is, perhaps, the most pernicious of the series given for the defendant. It can not be contended that said instruction is the law of this State, but the converse of the proposition is the law, to-wit: that although the woman attempted to cross the track in front of the car, and was negligent in so doing, yet, if the defendant's servants, in charge of the car "after such dangerous position of the deceased became known to them" could have averted the injury (by ordinary care is the rule in most cases, but in this case) by stopping the car within the shortest time and space possible, as required by the ordinance, and failed to do so, then the defendant is liable, notwithstanding the negligence of the deceased in attempting to cross the track in front of the car. This is the well-settled law of this State in cases cited above. The instruction does not seek to excuse the defendant for the reason that its servants could not have averted the injury, but boldly declares that, although they saw her condition of peril, brought about by her negligence in attempting to pass in front of a moving car, yet they could, without using "proper care," run her down, with impunity. The instruction is not in accord with the settled law, and declares a principle inhuman and criminal. Reardon v. Railroad, 114 Mo. 406.

*Geo. W. Easley,* with *Boyle, Priest & Lehmann* for respondent.

(1) There was no error in giving either the first or second instruction on behalf of the defendant. They each properly announced the doctrine that, notwithstanding the negligence of the defendant, yet the plaintiff is not entitled to recover if the jury find from the

evidence that the deceased was injured by knowingly trying to pass in front of a moving car in such proximity thereto as to make the danger imminent. It was undisputed that the deceased could have seen and heard, had she looked and listened for the approach of the car, and could, by ordinary care, have avoided injury, and her conduct was such contributory negligence as bars the plaintiff's recovery. Holverson v. Railroad, 157 Mo. 216; Watson v. Railroad, 133 Mo. 250; Boyd v. Railroad, 105 Mo. 371; Sinclair v. Railroad, 133 Mo. 241; Huggert v. Railroad, 134 Mo. 673; Vogg v. Railroad, 138 Mo. 172; Culbertson v. Railroad, 104 Mo. 35; Railroad v. Mosley, 57 Fed. 922; Kirtley v. Railroad, 65 Fed. 391; Murphy v. Railroad, 153 Mo. 262; Butts v. Railroad, 98 Mo. 272; Loring v. Railroad, 128 Mo. 349; Kries v. Railroad, 148 Mo. 321; Kotney v. Railroad, 151 Mo. 35; Kelsey v. Railroad, 129 Mo. 262; Lane v. Railroad, 132 Mo. 4; Scofield v. Railroad, 114 U. S. 615; Maxey v. Railroad, 113 Mo. 1; Payne v. Railroad, 136 Mo. 562. (2) There was no error in giving either the third or fourth instruction on behalf of the defendant. They both assert the doctrine that the motorman had the right to assume that the deceased knew the car was approaching, and would have regard for her own safety, and not attempt to pass in front of the same if it was manifestly unsafe so to do, but that she would stop before passing onto the track. The motorman had a right to proceed at a lawful rate of speed until the deceased placed herself in position of peril by coming upon the track, or so close to it as to endanger her. Boyd v. Railroad, 105 Mo. 381; Smith v. Railroad, 52 Mo. App. 42; Baker v. Railroad, 122 Mo. 595; Yancey v. Railroad, 93 Mo. 438.

MARSHALL, J.—This is an action under the statute, to recover five thousand dollars damages for the death of the plaintiff's wife, on the 14th of October, 1896, caused by being run into and injured by one of

the defendant's electric cars, on Fourteenth street, opposite the termination of Belmont street, in the city of St. Louis.   There was a verdict and judgment for the defendant, and the plaintiff appealed.

The petition charges that the plaintiff's wife was crossing Fourteenth street, "on the *north* crossing of Belmont street" (the evidence on both sides showed she was crossing on the south crossing), and that the car, without any warning being given of the approach of the car by the ringing of the bell or otherwise, ran upon her, knocked her down and so injured her as to cause her death.

The petition assigns as further negligence, that there was a city ordinance in force, which required motormen and conductors to keep vigilant watch for vehicles and persons on foot, especially children, either upon the track or moving towards it, and upon the first appearance of danger to stop the car within the shortest time and space possible, and that the defendant's motorman and conductor failed to obey the requirements of this ordinance.   The petition assigns as further negligence, that there was a city ordinance in force which prohibits the defendant from running its cars at a greater rate of speed than ten miles an hour, and that the car that struck the plaintiff's wife was running at a greater rate of speed than ten miles an hour.

The petition charges that in consideration of the grant by the city of the right to operate its cars, the defendant undertook and bound itself to observe and obey the provisions of the ordinances herein referred to.

The answer is a general denial, and a plea of contributory negligence, in that the plaintiff's wife walked "upon defendant's track in front of its car, without looking or listening for an approaching car, in such proximity to the car that it was impossible to stop the car and avoid the collision and injury."

The *locus in quo* was this:  Fourteenth street runs

north and south and is eighty feet wide, and the defendant has a double track thereon, near the center of the street, the west track being used by the south-bound cars, and the east track by the north-bound cars. Belmont street is twenty-five feet wide, and intersects Fourteenth street on its west side. It stops at Fourteenth street. East of Fourteenth street, but not on a direct prolongation of Belmont street, there is an alley fifteen feet wide. The next street south of Belmont is Spruce street, and the distance between the two is only one hundred and fifty feet. The next street north of Belmont is Clark avenue, and the distance between these two is also only one hundred and fifty feet.

The undisputed facts in the case are that the deceased was the wife of the plaintiff; that they lived at 1411 Belmont street; that about ten o'clock on the night of October 14, 1896, she left the house to get the plaintiff something to eat; that she went east to Fourteenth street, and then started across Fourteenth street, at the south crossing of what would be the prolongation of the south side of Belmont street; that the street was free of obstruction, and while there were no lights at that point, there were lights at Spruce street on the south, and at Clark avenue on the north; that the night was clear; that there was plenty of light there and an approaching car could have been easily seen as far south as Spruce street and as far north as Clark avenue; that the plaintiff's wife was proceeding across Fourteenth street, going in an easterly direction, when she was injured, and that Fourteenth street, at the point of the accident, is slightly up grade towards the north.

The disputed facts are as follows: The evidence on the part of the plaintiff tended to show that she was walking very slowly; that the car was running very rapidly, as much as fifteen miles an hour; that no gong was sounded; that she was struck by a north-bound car just as she was about to step off the east track; that the car did not slacken its speed before it struck her;

that the car was stopped at a point about thirty feet beyond the point of the accident; that a car running at the rate of six miles an hour could be stopped by means of the brakes, in about ten feet, and by using the reverse power, in three to four feet; that running eight or ten miles an hour it could be stopped in thirty feet by using the brakes; that running fifteen miles an hour it could be stopped in a car-length and a half by using the reverse power.

The witnesses for the plaintiff were standing at the northwest corner of Fourteenth and Spruce street, at the time of the accident. Because the car was between them and the plaintiff's wife, they did not see the car strike her. But they said that when she was between the sidewalk (on the west side of Fourteenth street) and the railroad track, the car was at Spruce street.

The city ordinances pleaded were offered in evidence and it was admitted that the defendant had accepted them.

The evidence of the defendant's motorman was that he saw the plaintiff's wife when the car was about thirty feet north of Spruce street; that she was then between the curb on the west side of Fourteenth street and the south-bound track; that the car was then running about five miles an hour; that he sounded the gong when he first saw her, and reduced the speed of the car to four miles an hour; that she continued on her way until she got to the south-bound track; that, "At that time when she stopped there I was within probably perhaps twenty feet of her—she paused for an instant and when I got within five feet of her she just deliberately walked over the track. I reversed my car but she was too close and it hit her. Q. Which part of the car hit her? A. The east side of the car—the opposite side—she almost cleared the track. It was the fender hit her about at the ankle and she fell down on the street." This witness testified that if the reverse cur-

rent is applied to a car going at the rate of five miles an hour, on a slight grade, the car will slide thirty feet.

The conductor of the car testified that the car was running about five miles an hour, and that the motorman rang the gong continuously as he approached Belmont street; that it was a foot bell; that the car stopped with the rear platform "alongside" of where the plaintiff's wife laid.

The superintendent of the defendant testified that the car weighed about eight tons, and that it would take four and a half seconds to stop the car if it was running at a rate of four or five miles an hour, and that the car will slide from five to ten feet even on a slight up grade.

The assistant superintendent of the city hospital testified that when the plaintiff reached the hospital she had a contusion of the skull, and was under the influence of liquor. "She had the odor of alcohol on her breath."

## I.

Under this state of the record, counsel for the appellant very properly says: "For the purpose of this hearing we will concede that there was evidence for the defendant tending to sustain the answer and make the issue for the jury, and we claim a reversal of the case upon the grounds herein stated;" that is, that the trial court erred in a matter of law, in giving the defendant's instructions.

To fully understand the case it is necessary to set out all the instructions—bearing upon the question of the liability of the defendant and the duty of the deceased—that were given at the request of either the plaintiff, or the defendant, and by the court of its own motion.

The instructions given for the plaintiff are as follows:

"1.   If the jury find from the evidence in this case, that, on the 13th day of October, 1896, the defendant was operating the railway and car herein mentioned, as a public conveyance, for the purpose of transporting persons for hire from one point to another, within the city of St. Louis, as a street railway; and that at said time, Fourteenth and Belmont streets, at the place mentioned in the evidence, were public streets within the city of St. Louis; and that Jennie Moore, mentioned in the evidence, was the lawful wife of the plaintiff; and that on the night of October 13, 1896, Jennie Moore, was passing over the south crossing of Belmont and Fourteenth streets and whilst doing so the defendant's car ran against her and so injured her that she died from said injuries; and that said car was by the defendant's servants in charge of same being run at a greater rate of speed than ten miles per hour at said time; and that such excessive rate of speed, over ten miles per hour, directly contributed to cause said car to so strike and injure plaintiff's said wife; and that plaintiff's wife exercised ordinary care to look and listen for an approaching car while going upon and over defendant's track, then plaintiff is entitled to recover.

"2.   If the jury find from the evidence that on the 13th day of October, 1896, the defendant was operating the railway and car mentioned in the evidence for the purpose of transporting persons for hire from one point to another within the city of St. Louis as a street railway; and that at said time Fourteenth and Belmont streets were public streets within the city of St. Louis at the place mentioned in the evidence; and that on the night of said day the plaintiff's wife, Jennie Moore, was on the south crossing of said streets passing from the west side of Fourteenth street to the east side thereof across defendant's tracks; and that as the plaintiff's wife moved towards and across defendant's tracks defendant's motorman saw her; and that as plaintiff's wife approached and went upon defendant's track she

was in danger of being injured by defendant's north-bound car; and that defendant's motorman on the north-bound car saw, or by keeping a vigilant watch could have seen that the plaintiff's wife, as she approached and went upon defendant's north-bound track, was in danger of injury from said car, and therefore could have averted injury to plaintiff's wife by stopping said car within the shortest time and space possible and neglected to do so, then plaintiff is entitled to recover five thousand dollars.

"3. If the jury find from the evidence that as the defendant's car, moving northward, approached the south crossing of Belmont street, the plaintiff's wife was passing over said crossing; and that said crossing was a public crossing for pedestrians; and that as plaintiff's wife was so passing over said crossing she was struck and injured by defendant's north-bound car so that she died from said injuries; and that as said car approached said crossing defendant's servants in charge of the car failed to give any signal by bell or otherwise of the approach of said car to said crossing; and that said failure to give said signal directly contributed to cause the injury and death of plaintiff's wife; and that plaintiff's wife was exercising ordinary care whilst approaching and passing over said track, then plaintiff is entitled to recover five thousand dollars; provided, the jury believe from the evidence that such failure to give such signal was negligence on the part of the servants of the defendant.

"4. By the term 'ordinary care,' as used in the instructions is meant that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances. A failure to exercise ordinary care as thus defined would be negligence.

"5. The court instructs the jury that if they find from the evidence that the deceased Jennie Moore did see the approach of defendant's car before it struck and injured her, yet if said car was distant from her a suffi-

cient distance to have enabled her to cross the track ahead of the car in safety by the exercise of ordinary care and expedition, if said car was running not exceeding ten miles per hour; then, she had the right to proceed to cross defendant's track if she used ordinary care and expedition in doing so. And if she did not know or have reason to believe said car was in fact running more than ten miles per hour (if, in fact, said car was running more than ten miles per hour)."

The instructions given at the request of defendant are as follows:

"1. The jury are instructed that the negligence alleged against the defendant is: First. That the defendant failed to give warning of the approach of the car by sounding the bell or otherwise. Second. That the defendant did not keep a vigilant watch for persons on foot upon the tracks or moving towards them and did not upon the first appearance of danger stop the car within the shortest time and space possible. Third. That the defendant ran its car at the time in question at a rate of speed exceeding ten miles an hour.

"And the court instructs the jury that it is incumbent upon the plaintiff to prove that the defendant was guilty of one or the other of these specified acts of negligence, and that such negligence on its part caused the injury complained of. And even though the jury find that the defendant was guilty of one or the other of the acts charged, and even if they find that such negligence contributed to the injury complained of, still, if they further find that the deceased, Mrs. Moore, was negligent in attempting to cross the track of defendant as she did, and that such negligence on her part contributed to the accident, then the plaintiff is not entitled to recover.

"2. The court instructs the jury that, although they may believe and find from the evidence that the defendant, through its agents and servants in charge of its said car, was negligent in failing to sound the gong,

and that it was negligent in running said car at a rapid rate of speed, yet the plaintiff is, nevertheless, not entitled to recover if you further believe that the deceased knowingly tried by hurrying to pass in front of said moving car in such close proximity thereto as to make the danger of collision imminent. And this is true, even though you may further find that the agents and servants of the defendant failed to use proper care to stop said car after such dangerous position of the deceased became known to them.

"3. The court instructs the jury that, although they may believe and find from the evidence that the motorman of defendant's car saw the deceased wife of plaintiff approaching the track, on which said car was moving, afoot and with said car in view, said motorman, nevertheless, had the right to assume that said deceased would not pass in front of said car, but that she would stop before passing onto the same, and that, under such assumption, he had the right to proceed with the speed of said car unabated, unless you believe that the same was being run at an unlawful or negligent rate.

"4. Even though the motorman saw Mrs. Moore crossing the street and moving toward the track along which this car was moving, still he had the right to assume that she knew the car was approaching and would have regard for her own safety and not attempt to pass in front of the same if it was obviously dangerous to attempt to do so. And the motorman had the right to assume that she would stop when she came to the track and not attempt to cross in front of his car if it was manifestly unsafe to do so. And the motorman had the right to proceed at a lawful rate of speed and was not bound to stop his car until she placed herself in a position of peril by coming upon the track or so close to it as to endanger her."

The court of its own motion gave to the jury the following instruction:

"The jury are instructed that the negligence al-

leged against the defendant is: First. That at the time in question the defendant failed to give warning of the approach of the car, by sounding the bell or otherwise. Second. That the defendant did not keep a vigilant watch for persons on foot upon the tracks or moving towards them, and did not, upon the first appearance of danger, stop the car within the shortest time and space possible. Third. That the defendant ran its car at the time in question at a rate of speed exceeding ten miles per hour.

"And the court instructs the jury that it is incumbent upon the plaintiff to prove that the defendant was guilty of one or the other of these special acts of negligence and that such negligence on its part caused the injury complained of.

"And even though the jury find that the defendant was guilty of one or the other of the acts charged, and even though they find that such negligence contributed to the injury complained of, still, if they further find that the deceased, Mrs. Moore, was negligent in attempting to cross the track of defendant as she did, and that such negligence on her part contributed to the accident, then the plaintiff is not entitled to recover, unless you further find from the evidence that the defendant's motorman saw, or by the exercise of reasonable care might have seen, that the plaintiff's wife was in a position of danger or peril, and that the said motorman thereafter could have averted the injury to plaintiff's wife by the exercise of reasonable or ordinary care, but negligently failed to do so."

It is unnecessary to notice the first instruction given for the plaintiff further than to say that there is no evidence whatever in the record that the deceased looked or listened for an approaching car while going upon or over the defendant's track. The plaintiff introduced no evidence whatever bearing upon this proposition, and the defendant's evidence shows that she paused an instant while on the south-bound track, when

the car was twenty feet from her, and then deliberately stepped upon the north-bound track when the car was within five feet of her.

The plaintiff's second instruction predicates a right of recovery upon a violation of the pleaded and accepted city ordinance, and read in connection with the defendant's third and fourth instructions, and with the instruction given by the court of its own motion, the jury could not fail to understand the law of the case, as made.

The appellant, however, attacks the second instruction given for the defendant.

The dominant idea expressed by this instruction is that notwithstanding the defendant may have been primarily negligent, nevertheless the plaintiff can not recover, if thereafter both the defendant and the deceased were guilty of concurrent, subsequent negligence, nor can the plaintiff recover if both were guilty of negligence of such kind, character or degree as to constitute it recklessness or wantonness.

The rule is thus stated in 7 Am. and Eng. Ency. of Law (2 Ed.), pp. 385-6: "And so when the negligence of the person inflicting the injury is subsequent to, and independent of, the carelessness of the person injured, and ordinary care on the part of the person inflicting the injury would have discovered the carelessness of the person injured in time to avoid its effects and prevent injuring him, there is no contributory negligence, because the fault of the injured party becomes remote in the chain of causation. In such a case the want of ordinary care on the part of the injured person is not held a juridical cause of his injury, but only a condition of its occurrence.

"*Conversely,* when the carelessness of the person inflicting the injury is antecedent to the negligence of the person injured, and the latter might by ordinary care have discovered the failure of the former to use such care, in time to avoid the injury, there can be no

recovery, because the intervening negligence of the injured person is the direct and proximate cause of his injury.''

Judge COOLEY. states the law, with his usual force and clearness as follows: ''Regarding the case of a negligent injury. the general result of the authorities seems to be, that if the plaintiff or party injured, by the exercise of ordinary care under the circumstances, might have avoided the consequences of defendant's negligence, but did not, the case is one of mutual fault, and the law will neither cast all of the consequences upon the defendant, nor will it attempt any apportionment thereof.'' [Cooley on Torts (2 Ed.), 812.]

The rule, however, is nowhere more clearly or accurately stated than in the recent work of Nellis on the Law of Street Surface Railroads, pp. 383-4, where he says: ''It may be stated as a rule that a plaintiff who, by his own negligence, has placed himself in a dangerous position where an injury was likely to result, may still recover for such injury if the defendant with knowledge, or such notice as' is equivalent to knowledge, of plaintiff's danger, failed to exercise reasonable care by which the injury might have been avoided, unless the injury was the result of concurrent negligence of both parties.''

In Murphy v. Railroad, 153 Mo. l. c. 261, the court, speaking through BRACE, J., said: ''The violation of an ordinance by the defendant could not be the proximate cause of an injury which was the product of such negligence and the concurrent negligence of the plaintiff. The concurrent negligence of both in such a case is the proximate cause of the injury and the plaintiff can not recover. This is the law universally prevalent in this country and to it there is but one exception in this State made on the score of humanity, and that is, if sufficient time and opportunity intervene between the concurrent acts of negligence which produced the dangerous situation, and the injury, to have enabled

the defendant by the exercise of ordinary care to have prevented the injury and he fails to exercise such care, then he will not be protected by this rule, but to the failure to exercise such care will the injury be attributed as the proximate cause thereof, and for such failure the plaintiff may recover.''

To this rule I add the logical and necessary corrollary that if both parties are guilty of recklessness or wantonness, there can be no recovery. For if the injured party is guilty of recklessness or wantonness, he is no more entitled to recover for the defendant's recklessness or wantonness, than he would be if it was a plain case of negligence and contributory negligence in the first degree. [Holwerson v. Railroad, 157 Mo. 216.]

It has always been the law in this State that it is such gross negligence as precludes a recovery for a person to step on a railroad track directly in front of an approaching train and so close to it as to render it impossible to stop the train in time to avoid injury. [Boyd v. Railroad, 105 Mo. 371; Watson v. Railroad, 133 Mo. l. c. 250; Kelley v. Railroad, 75 Mo. l. c. 140; Sinclair v. Railroad, 133 Mo. l. c. 241; Kreis v. Railroad, 148 Mo. 321; Holwerson v. Railroad, 157 Mo. 216; Hook v. Railroad, 162 Mo. 569; Tanner v. Railroad, 161 Mo. 497; Van Bach v. Railroad, 171 Mo. 338.]

And this is true even if the train was running at a rate of speed in excess of the maximum rate permitted by law. [Tanner v. Railroad, 161 Mo. 497.] For in such case the negligence of the injured party and not the rate of speed of the train, is the proximate cause of the injury. To go upon a track in front of an approaching train and so close to it as to render it impossible to stop the train in time to avoid injury, is negligence, whether the train is moving rapidly or slowly, and the only question in any case is whether, notwithstanding such negligence of the injured party, the train could have been stopped in time to have avoided

the injury, and if the plaintiff bases a right to recover upon the failure of the defendant to exercise ordinary care to prevent the injury after the peril of the plaintiff, or party injured, was known, or could have been known by the exercise of ordinary care, the burden of alleging and proving that such was the fact rests upon the plaintiff.

If, however, the undisputed facts show that the injured party was guilty of such contributory negligence as will preclude a recovery, and if there is no evidence of a willful, reckless or wanton disregard of human life, on the part of the operatives of the train, there is nothing for a jury to pass upon and the court should sustain a demurrer to the evidence. [Tanner v. Railroad, 161 Mo. 497; Kellny v. Railroad, 101 Mo. 67; Holwerson v. Railroad, 157 Mo. 216; Van Bach v. Railroad, 171 Mo. 338; Guyer v. Railroad, 174 Mo. 344.]

If, instead of so doing, the trial court submits the case to the jury and gives improper and erroneous instructions, and the jury find for the defendant, the verdict will not be disturbed, notwithstanding such misdirection, because it is in consonance with the true law, and is for the right party, and because the plaintiff would not be entitled to a verdict at all upon such a showing. [Hill v. Wilkins, 4 Mo. 1. c. 88; Orth v. Dorschlein, 32 Mo. 366; Kelly v. Railroad, 88 Mo. 534; Ellerbe v. Bank, 109 Mo. 445; Homuth v. Railroad, 129 Mo. 1. c. 642; Haven v. Railroad, 155 Mo. 1. c. 223, 224, and cas. cit.]

In this case there is no evidence whatever that the deceased looked and listened for a car before going upon the track. All the evidence there is in the record is that furnished by the defendant's motorman, and he says that, ''When I just saw her I hit my gong and she kept coming until she got on the south-bound track. At that time when she stepped there I was within probably perhaps twenty feet of her. She paused for an instant

Vol 176 mo—35

and when I got within five feet of her she just deliberately walked over the track. I reversed my car but she was too close and it hit her.''

If the deceased saw the car coming, as her pausing on the south-bound track would indicate, and if the car was then within twenty feet of her, it was negligence for her to go upon the north-bound track in front of the approaching car and when it was within five feet of her, whether the car was running at four, five, eight, ten or fifteen miles an hour. The street was clear of obstruction, and there was plenty of light to see distinctly. The motorman saw the deceased. She saw the car or could have done so if she had looked. The motorman saw her approaching the track. He sounded the gong. She continued to approach until she reached the south-bound track. There she paused. The car was then twenty feet from her. The motorman had a right to believe that she intended to remain in her then place of safety until the car passed. Instead of doing so, however, when the car was within five feet of her, she stepped on the track in front of the car and attempted to cross the track. Then for the first time she placed herself in a place of imminent peril. Then it was too late to stop the car in time to avoid the injury, and this, too, whether the car was running at the rate of four miles an hour, as defendant's evidence shows, or at the rate of fifteen miles an hour as the plaintiff's evidence shows. There is no evidence whatever of willfulness, recklessness or wantonness on the part of the operatives of the car. The operatives of the car kept a vigilant watch for persons approaching or on the track, and on the first appearance of danger stopped the car in the shortest time and space possible, and therefore obeyed the city ordinances. The accident was painful and shocking. But it would not have occurred except for the negligence of the deceased in going upon the track when the car was within five feet of her. The plaintiff, therefore, made out no case

for the jury and the court should have so declared. The verdict of the jury is for the right party and is in harmony with the true law. The verdict will not, therefore, be disturbed, no matter whether the court misdirected the jury or not.

This conclusion makes it unnecessary to consider the other points urged for a reversal, further than to say that the facts upon which such points rest were sharply contested in the trial court, and that court found them in favor of the defendant, and as no abuse of discretion appears, this court will not disturb the finding of the trial court in this regard.

The judgment of the circuit court is affirmed.

*Brace, P. J.*, concurs; *Valliant, J.*, concurs in the result; *Robinson, J.*, absent.