SIMS, Respondent, v. ST. LOUIS & SUBURBAN
RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, February 13, 1906.

1. **CONTRIBUTORY NEGLIGENCE: Looking for Approaching
Car.** Where a traveller approached street railway tracks for
the purpose of crossing at a point where there were double
tracks, and looked for cars approaching from one direction,
but failed to look in the other direction from which a car ap-
proached and collided with him, he was guilty of such con-
tributory negligence as to preclude recovery for the injuries
received, in the absence of allegations or evidence that the
motorman wantonly caused the accident.

2. ———: **Last Chance: Concurring Negligence.** Although the
motorman may have been negligent in such case, the last
chance rule could not apply because the negligence of the
traveller did not precede that of the motorman, but the negli-
gence of both were contemporaneous and concurrent, contri-
buting directly to produce the injury.

Appeal from St. Charles Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

REVERSED.

*Jefferson Chandler* and *John Lionberger Davis* for appellant.

(1) The court erred in not giving defendant's instruction, asked at the close of plaintiff's evidence, in the nature of a demurrer to said evidence. Kellny v. Railway, 101 Mo. 67, 13 S. W. 806; Boyd v. Railroad, 105 Mo. 371, 16 S. W. 909; Holwerson v. Railway, 157 Mo. 216, 57 S. W. 770; Tanner v. Railway, 161 Mo. 497, 61 S. W. 826; Van Bach v. Railway, 171 Mo. 338, 71 S. W. 358; Guyer v. Railway, 174 Mo. 334, 73 S. W. 584; Fellenz v. St. Louis Ry. Co., 80 S. W. 49; M., K. & T. Ry. Co. v. Harrison, 77 S. W. 1037; Moore v. Railway, 176 Mo. 544, 75 S. W. 672; Davies v. Railway, 159 Mo. 1, 59 S. W. 982; Hook v. Railway, 162 Mo. 569, 63 S. W. 360; Murray v. Transit Co., 176 Mo. 183, 75 S. W. 611; Spiro v. Transit Co., 102 Mo. App. 250, 76 S. W. 684. (2) The court erred in giving to the jury plaintiff's instruction number 2 which said instruction told the jury that plaintiff was entitled to recover notwithstanding plaintiff's negligence contributed to his injury. Such an instruction in effect abolishes the law of contributory negligence in this case and permits a plaintiff to recover for his own wrong. There was moreover no evidence upon which to base the latter part of said instruction. Beach on Contributory Neg. (3 Ed.), secs. 9, 12; Holmes Com. Law, p. 96.

*R. H. Stevens* and *C. W. Wilson* for respondent.

(1) Under the evidence the demurrer to the evidence was properly overruled. McAndrews v. Railroad, 83 Mo. App. 233; O'Keef v. Railroad, 81 Mo. App. 386;

Cooney v. Railroad, 80 Mo. App. 226; Morgan v. Railroad, 159 Mo. 256, 60 S. W. 195. (2) Excessive speed is not negligence *per se* but is one of the circumstances to be considered by the jury in determining the question of negligence in any given case. Bell v. Railroad, 72 Mo. 54; Klockenbrock v. Railroad, 31 Mo. App. 351; Stepp v. Railroad, 85 Mo. 234. (3) It is necessary for the traveler to look and listen but not necessary to stop, look and listen. Smith v. Railroad, 52 Mo. App. 41; Bindbeutal v. Railroad, 88 Mo. 678; Hickman v. Railroad, 47 Mo. App. 65; Kelly v. Railroad, 88 Mo. 534. (4) Contributory negligence is no excuse if the railroad company by use of ordinary care could have avoided the injury . Hanlon v. Mo. Pac., 104 Mo. 381, 16 S. W. 233; Smith v. Railroad, 52 Mo. App. 36-41; Dahlstrom v. Railroad, 108 Mo. 525, 18 S. W. 919; Reardon v. Railroad, 114 Mo. 384, 21 S. W. 731; Sullivan v. Railroad, 117 Mo. 214, 23 S. W. 149; Fusili v. Railroad, 45 Mo. App. 535; Sinclair v. Railroad, 133 Mo. 233, 34 S. W. 76.

BLAND, P. J.—The action is to recover damages to property and for personal injuries, alleged to have been caused by defendant's negligence in running its car against the plaintiff's wagon. The specific charges of negligence were, first, running its car at a high and unlawful rate of speed, to-wit, thirty miles an hour; second, failure to ring a bell or give any warning of the car's approach; third, failure to stop the car after the defendant's motorman saw or, by the exercise of ordinary care, could have seen plaintiff's wagon crossing its track in ample time to have stopped the car and prevented the collision.

The answer was a general denial and a plea of contributory negligence on the part of the plaintiff in carelessly failing to look and listen for a car.

The reply denied all new matter in the answer.

The trial resulted in a verdict for plaintiff for $1,200. A motion for new trial was moved and over-

ruled and judgment was entered on the verdict. Defendant appealed.

The evidence shows that about one o'clock in the morning of August 15, 1900, plaintiff was driving eastwardly along Easton avenue, in the city of St. Louis. Plaintiff testified that as he approached the point where the tracks of the defendant railway company cross said Easton avenue, he was driving about three or four feet from the south curb of the street; that the street was rough and his wagon was loaded with farm products; that he looked both ways, north and south, for a car while his horses were traveling toward the track; that there were double tracks running north and south and he was looking south when his wagon entered the west or south-bound track, and as he turned to look north, he saw the car that struck him just about the building line on the north side of Easton avenue, coming at a very high rate of speed; that he was scared and did not have time to jump before his wagon was struck with such terrific force as to throw him about forty feet from the wagon and against a post; that a shoe of one of his horses was jerked off and his wagon "smashed up;" that the wagon was struck almost immediately on the brake and hub of the hind wheel, the horses being on the east track; that by the force of the fall against the post, two of his ribs and his collar bone were broken and that he had not fully recovered from his injuries; that one of his horses was made seriously lame and his wagon ruined. Plaintiff also testified that he did not hear the car or gong until he got on the south track, and that his sight and hearing were good. Plaintiff's evidence and the evidence of his witnesses, is that the car was running at a speed of from twenty-five to thirty miles an hour and that the gong was not sounded until within a few feet of the wagon.

Plaintiff employed and assisted Edgar Rapp, a surveyor, to survey and make a plat of the crossing and surroundings. The plat sufficiently exhibits the physi-

cal facts and we insert it here (in condensed form) for the reason they are important in view of the fact that on them and the plaintiff's own evidence, the defendant rests its contention that the court should have given its instruction in the nature of a demurrer to plaintiff's evidence, asked at the close of his evidence and again at the close of all the evidence.

On the plat are two stars (A and B) indicating two positions of plaintiff's wagon as he drove on the crossing and the distance from these points (11 and 14 feet, respectively) to the outside rail of defendant's tracks. The dotted lines running north from these two points show the line of vision and the distance on defendant's tracks where a car could have been seen. From point B a car could have been seen one hundred and eighty feet north, and from point A two hundred and twenty-nine feet. Rapp testified that point A represented, by actual test, the distance a man would be, seated on a wagon, when his horses' heads would be over the west rail of the track, and point B the distance before his horses' heads had quite reached the track. Plaintiff testified that from point A, looking north on the track, there was no obstruction and a car could be seen two hundred and twenty-nine feet and from point B a car could be seen one hundred and eighty-one feet to the north; that, ordinarily, a car could be heard one hundred and fifty feet, and the gong, if sounded, three hundred feet. Plaintiff described his approach to the tracks as follows: "As I approached the Suburban track I was going slow, from the fact the bulk of my load was on top of the wagon, and tomatoes are very heavy, and I always had a horror in passing there, and I looked first one way and then another, and I heard no car and seen none until my horse was partially across the track, or I was just on the track, and I seen the car, I think, an instant before I heard the gong, and the man hallooed and I threw up my hands, and I thought I was going to be killed; just hadn't time to jump or do anything." Plain-

Goch

tiff further testified that he was looking south for cars, and after he saw the car coming from the north it did not seem to him it was any time, that could be reckoned in minutes, before his wagon was struck; that he kept looking, was turning his head from the south to the north, and then saw the car.

The evidence shows that defendant's tracks, running north from Easton avenue, are straight and the grade ascending and in daylight, a wagon on the crossing could be seen for a distance of eight or nine hundred feet. There were three small lights on the avenue near the crossing none right at the crossing, nor any large lights in the neighborhood. The motorman and conductor testified that the car was running at a speed of from five to six miles an hour. Plaintiff's evidence tends to show that a car running at that speed could be stopped in from twenty-five to thirty feet. The defendant's evidence tends to show that a car running twenty miles an hour could not be stopped in less than two hundred feet. The evidence in respect to the distance a running car can be heard is conflicting. Defendant's witnesses, three police officers, standing near the crossing at the time of the accident, testified that they heard the car two blocks north of the crossing. Plaintiff testified that he did not hear it at all. The motorman testified that he did not see the plaintiff until he was within fifteen feet of him and then did everything in his power to stop the car. Defendant's evidence is that the car ran only a few feet after striking the wagon and merely pushed the wagon around.

The plaintiff's evidence shows that, if he had looked north from either point A or B, he would have seen the car, but he continued to look south and did not look north for a car until his horses had crossed over and his wagon was on the west track of defendant's railway. His duty was to look both ways, and to look north at his earliest opportunity to see if there was a car coming from that direction; and his evidence, that he could not

look in two directions at the same time, does not excuse him for his failure to look north when he should have done so. He could have changed the direction of his vision from south to north in the twinkling of an eye, and had he looked north from point B on the plat, according to his own evidence, he could have seen the car, if at that time it was within one hundred and eighty-one feet of the crossing, and it is beyond doubt that had he looked north from point A on the plat, he could not have failed to see the car. To have seen the car from either of these points would have given him ample time to have stopped his team and avoided the collision. On his own evidence, by which he is conclusively bound, plaintiff convicted himself of negligence which directly contributed to his injury, and there being neither allegation nor evidence that the motorman willfully and wantonly ran his car onto plaintiff's wagon, the court should have granted defendant's peremptory instruction. [Guyer v. Railroad, 174 Mo. 344, 73 S. W. 584; Van Bach v. Railroad, 171 Mo. 338, 71 S. W. 358; Tanner v. Railroad, 161 Mo. 497, 61 S. W. 826; Holwerson v. Railroad, 157 Mo. 216, 57 S. W. 770.] But the plaintiff's counsel contends that contributory negligence is no excuse, if the defendant's motorman, by the use of ordinary care, could have avoided the injury; in other words, the last fair chance or humanitarian doctrine is invoked. That doctrine is, that where A, after discovering that B has carelessly exposed himself to danger, neglects to use ordinary care to avoid hurting him and inflicts injury upon B, as a result of his (A's) negligence, then A, is liable. This doctrine presupposes that B's careless exposure of himself to danger preceded the negligence of A, and it does not apply where the negligence of both parties is contemporaneous. Beach in his work on Contributory Negligence, at section 56, states the doctrine as follows:

"The courts have usually adopted this form of expressing the law in cases where the negligence of the plaintiff preceded that of the defendant in point of time,

and it has more generally been applied where the defendant's negligence is the proximate cause of the injury. When the negligent acts or omissions of the parties to the action were contemporaneous—or, what is to say the same thing, when the catastrophe is the result of concurring or mutual acts of negligence, the plaintiff cannot recover damages. This is hardly more than a reiteration of the general rule of contributory negligence, but it is the form in which the rule is sometimes stated. Having now considered the legal effect of the plaintiff's negligence, both when, in point of time, it is prior to that of the defendant, and when it is contemporaneous therewith, we proceed to a discussion of the consequences of that negligence when it is subsequent to the negligent wrongdoing of the defendant."

This section is approvingly quoted in Holwerson v. Railroad, supra, at    page 226, and is in full accord with the decisions in Guyer v. Railroad, Van Bach v. Railroad, and Tanner v. Railroad, supra. The negligence of the plaintiff and of the defendant, if it was negligent, were contemporaneous and concurrent and the negligence of both directly contributed to produce the injury. In such circumstances the authorities are all one way that plaintiff cannot recover.

The judgment is reversed.    All concur.